**SALT LAKE COUNTY, a body corporate and politic of the State of Utah, Plaintiff and Respondent,**

v.

**Linda J. CARLSTON, Defendant and Appellant.**

**No. 880053–CA.**

Court of Appeals of Utah.

June 21, 1989.

Robert H. Henderson, Jody Burnett, Salt Lake City, for defendant and appellant.

David E. Yocom, Jay Stone, Salt Lake City, for plaintiff and respondent.

Before BILLINGS, JACKSON and ORME, JJ.

---

JACKSON, Judge:

Linda J. Carlston appeals from the circuit court's denial of her motion for new trial after a jury verdict in favor of Salt Lake County ("County") on its negligence claim. We affirm.

In December 1986, the County sued Carlston for negligently causing $551 in collision damages to one of its vehicles. The case went to trial on July 30, 1987. After voir dire of a jury venire comprising five women and seven men, one woman was excused for cause. The County then used all of its peremptory challenges to strike three of the four women remaining on the venire. The empanelled jury consisted of one woman and three men. Carlston made no objection to the composition of the jury or to the manner in which the County had exercised its peremptory challenges, and the trial proceeded to completion that day.

Two weeks after the jury returned a special verdict finding Carlston negligent, she filed a motion for new trial pursuant to Utah R.Civ.P. 59(a)(1). She claimed she was denied a fair trial because the County's peremptory challenges of the three women made it impossible for the petit jury to reflect a fair cross section of the community. In her three-page supporting memorandum, Carlston referred the trial court only to the following trio of cases, summarizing their holdings and asserting, with meager analysis, that their reasoning applied to her case.[1]

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court overruled prior case law and held that a criminal defendant could make out a prima facie denial of the fourteenth amendment right to equal protection by showing the trial court that: he or she is a member of a "cognizable racial

group"; the state prosecutor exercised peremptory challenges to remove members of defendant's race from the jury venire; and those facts and other relevant circumstances raised an inference that the venire members were excluded by the prosecutor on account of their race.[2] *Id.*, 106 S.Ct. at 1723. Once the defendant makes out this prima facie case of discrimination, the burden shifts to the prosecution to come forward with a racially neutral explanation for the challenges. *Id.* The court specifically declined to address Batson's separate sixth amendment claim that the prosecutor's racially based peremptory challenges had denied him his sixth amendment right to trial by an impartial jury. *Id.* 106 S.Ct. at 1716 n. 4.

Two years before *Batson*, however, the Second Circuit Court of Appeals had held that the sixth amendment prohibits a prosecutor's use of peremptory challenges to strike potential jurors of a particular race. *McCray v. Abrams*, 750 F.2d 1113 (2nd Cir.1984). That judgment was vacated by the United States Supreme Court and remanded for reconsideration in light of *Batson*. *Abrams v. McCray*, 478 U.S. 1001, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986). Nevertheless, the Second Circuit later reaffirmed its sixth amendment analysis in *McCray* in the third case relied upon by Carlston, *Roman v. Abrams*, 822 F.2d 214, 226 (2nd Cir.1987). Although recognizing that the sixth amendment does not give a criminal defendant the right to a petit jury of any particular composition, the court in *Roman* held that it does guarantee the *possibility* of a petit jury reflecting a cross section of the community and prohibits the prosecutor's exercise of peremptory challenges "discriminatorily in a manner that eliminates that possibility." *Id.*[3]

1. Although it is possible appellant made a less superficial analysis and presentation of the issues at oral argument on the motion for new trial, she did not include a transcript of that hearing in the record on appeal.

2. The Utah Supreme Court recently considered such a claim in *State v. Cantu,* 750 P.2d 591, 596 & n. 3 (Utah 1988), holding that Hispanics or Spanish-surnamed persons are a "cognizable ra-

cial group" for purposes of equal protection analysis under *Batson.*

3. The Sixth Circuit Court of Appeals reached the same conclusion in *Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985), and extended the rule to defense counsel's exercise of peremptories. Like *McCray,* this opinion was vacated and remanded for consideration in light of *Batson,* but the court summarily reinstated its prior opinion. *Booker v. Jabe,* 801 F.2d 871 (6th Cir.1986) (per

On appeal, Carlston again refers to these authorities, although she acknowledges that the sixth amendment does not apply in civil proceedings. She asserts, for the first time, that Sections 7, 10, and 11 of Article I of the Utah Constitution and Utah Code Ann. §§ 78-21-1, 78-21-2 (1987) prohibit a party in a civil action from exercising its peremptory challenges in a manner that unreasonably restricts the possibility that the jury ultimately selected will represent a fair cross section of the community. Appellant cites no cases interpreting or applying the Utah constitutional provisions and statutes on which she relies.

■■■■ Without expressing any view on the extent to which the equal protection clause of the federal constitution, the due process clause of the state constitution, or the state constitutional and statutory jury trial provisions proscribe a civil litigant's exercise of peremptory challenges of jury venire members solely because they are women,[4] we decline to address these issues because appellant failed to present them to the trial court in a timely manner.

Carlston made no challenge to the jury selection process in this case until after the return of an adverse verdict. It is axiomatic that, before a party may advance an issue on appeal, the record must clearly show that it was *timely* presented to the trial court in a manner sufficient to obtain a ruling thereon. *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 894 n. 2 (Utah 1988). Issues not raised in the trial court in timely fashion are deemed waived, precluding this court from considering their merits on appeal. *E.g., Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832, 837 (Utah 1984) (hearsay objection raised for the first time in post-judgment motion is too late to be reviewed on appeal); *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1045 (Utah 1983) (issue of contract amendment untimely where raised in objection to summary judgment).

We see no reason to exempt *Batson*-type constitutional claims from application of this waiver rule.[5] In describing the eviden-

curiam), *cert. denied sub nom Michigan v. Booker*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). *See also Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 1775 n. 6, 90 L.Ed.2d 137 (1986) (Marshall, J., dissenting).

In *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the United States Supreme Court held that the sixth amendment guarantee of an impartial jury in criminal cases required that the jury venire be drawn from a fair cross section of the community. The Court cautioned, however, that

in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition.

*Id.* at 538, 95 S.Ct. at 702. The Court recently avoided the opportunity to rule directly on whether the sixth amendment right to an impartial jury also applies to the petit jury chosen in a particular case. *Teague v. Lane*, — U.S. —, 109 S.Ct. 1060, 1065, 103 L.Ed.2d 334 (1989); *but see Batson*, 106 S.Ct. at 1717 n. 6; *Lockhart v. McCree*, 476 U.S. at 174, 106 S.Ct. at 1765 (dictum concluding that to do so would be "unworkable and unsound").

4. *Batson*'s equal protection analysis has been applied in civil cases where the litigant claimed racial discrimination in the exercise of peremptory challenges by the opposition, a nongovern-

mental party. *Fludd v. Dykes*, 863 F.2d 822 (11th Cir.1989); *Edmonson v. Leesville Concrete*, 860 F.2d 1308 (5th Cir.1988) (using *Batson* analysis to define rights of civil litigant guaranteed by due process clause of fifth amendment because of the governmental character of the jury selection procedure).

Some recent criminal cases, however, have refused to extend *Batson* to alleged discrimination on the basis of gender by a prosecutor exercising peremptory challenges. *E.g., United States v. Hamilton*, 850 F.2d 1038 (4th Cir.1988) (also applying *Batson* equal protection analysis to federal prosecutor's allegedly racially discriminatory exercise of peremptories and rejecting a sixth amendment fair cross section claim); *State v. Adams*, 533 So.2d 1060 (La.App.1988); *State v. Oliviera*, 534 A.2d 867 (R.I.1987). *But see People v. Wheeler*, 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (1978) (state constitutional right to impartial jury prohibits prosecution's exercise of peremptories to exclude prospective jurors solely because of group bias).

5. *See State v. Bankhead*, 727 P.2d 216 (Utah 1986) (per curiam) (claim that jury panel did not represent fair racial cross section was waived under Utah Code Ann. § 78-46-16(1) (1987) because not lodged before jury was sworn). A related principle of appellate review, which precludes consideration on appeal of issues not raised at all in the trial court, applies to constitutional issues unless liberty is at stake. *See Pratt v. City Council of Riverton*, 639 P.2d 172 (Utah 1981).

tiary burden on a criminal defendant alleging discrimination in the exercise of peremptories, the *Batson* court itself referred to a defendant's "timely objection to a prosecutor's challenges." *Batson,* 106 S.Ct. at 1724. According to the Fifth Circuit Court of Appeals, the *Batson* court envisioned a prompt motion to strike the jury panel, "probably before the venire was dismissed." *United States v. Erwin,* 793 F.2d 656, 667 (5th Cir.1986) (*Batson* objection to exercise of peremptories waived where not raised until after dismissal of unselected venire members), *cert. denied,* 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986); *see State v. Harris,* 157 Ariz. 35, 754 P.2d 1139 (1988) (*Batson* claim waived where not raised until day after jury empanelled); *Thomas v. State,* 517 So.2d 1285 (Miss.1987) (*Batson* objection timely only if made prior to empanelling jury; motion for new trial too late). In a case subsequent to *Erwin,* the Fifth Circuit gave two justifications for requiring a timely objection to preserve *Batson* claims. We believe they apply with equal force in the civil litigation context:

> The "timely objection" rule is designed to prevent defendants from "sandbagging" the prosecution by waiting until trial has concluded unsatisfactorily before insisting on an explanation for jury strikes that by then the prosecutor may largely have forgotten. Furthermore, prosecutorial misconduct is easily remedied prior to commencement of trial simply by seating the wrongfully struck venireperson. After trial, the only remedy is setting aside the conviction.

*United States v. Forbes,* 816 F.2d 1006, 1011 (5th Cir.1987); *see People v. Holder,* 153 Ill.App.3d 884, 106 Ill.Dec. 700, 701, 506 N.E.2d 407, 408 (1987) (waiver rule enforced "so as not to allow a defendant to object to that which he has acquiesced in" throughout trial).

In addition, the process mandated by *Batson,* which first requires a prima facie showing by defendant and then a showing by the prosecution to rebut the inference of racially based challenges, rests on the premise that the trial court will hear the objection and make a factual finding of whether the prosecutor has used peremptory challenges in a discriminatory manner. *See Irving v. State,* 498 So.2d 305, 318 (Miss.1986). Failure to make a timely objection to the exercise of peremptory challenges defeats *Batson*'s requirement that their validity be determined first by the trial judge on the evidence presented, *id.,* deprives the accused attorney of the opportunity to present evidence of any constitutionally permissible reasons for challenges to the venire members, and leaves the appellate court with no factual basis in the record on which to conduct a meaningful review. *See State v. Holder,* 155 Ariz. 83, 745 P.2d 141 (1987).

Because Carlston proceeded to trial without presenting her *Batson*-type claim to the trial judge for determination and rectification of the alleged denial of her constitutional rights, we conclude that she waived any such objection. Accordingly, the trial judge did not abuse her discretion in denying Carlston's motion for new trial. The judgment of the trial court is affirmed.

BILLINGS and ORME, JJ., concur.