2012 UT 88

**In the matter of the GUARDIAN-SHIP/conservatorship OF A.T.I.G., a minor child**

**T.D.G., Appellant,**

**v.**

**L.R. and G.R., Appellees.**

**No. 20100288.**

Supreme Court of Utah.

Dec. 11, 2012.

Danny Quintana, Benjamin B. Grindstaff, Salt Lake City, for appellant.

Judith D. Wolferts, Thomas R. Grisley, Salt Lake City, for appellees.

Martha Pierce, Salt Lake City, for Office of the Guardian Ad Litem.

Chief Justice DURRANT, Opinion of the Court:

## INTRODUCTION

¶ 1 This case involves the testamentary appointment of guardianship and conservatorship of a minor (Child). Although he never formally intervened in the case below, Child's biological father, Tetlo "Danny" Goings, challenges the appointment of Child's maternal grandparents (Grandparents) as Child's guardians. On appeal, Mr. Goings argues that (a) the district court erred in its interpretation of the term "parent" and accordingly, the guardianship petition was invalid on its face; (b) the guardianship petition was fraudulent; (c) even if they were entitled to guardianship, Grandparents were not entitled to custody of Child; and (d) the court of appeals improperly awarded attorney fees to Grandparents. Grandparents argue that Mr. Goings lacks standing to bring this appeal because he never formally intervened in the case below.

¶ 2 We conclude that Mr. Goings received statutory intervenor status when he filed his objection to the Guardianship Appointment. Accordingly, he has standing to bring his appeal even though he did not formally intervene in this case. But we also conclude that Mr. Goings failed to preserve any of the issues he raises on appeal and that none of them warrant reversal under our plain error review. Finally, we do not consider whether the court of appeals properly sanctioned Mr. Goings's counsel because we lack jurisdiction to consider this issue. Accordingly, we affirm the district court's denial of Mr. Goings's motion to vacate the appointment of Grandparents as Child's guardians.

## BACKGROUND

¶ 3 Child was born in 2005. Although Child's mother (Mother) was never married to Mr. Goings, Child was named after Mr. Goings's brother and was given his family name. But Mr. Goings was not listed as the father on Child's birth certificate, and he did not sign a voluntary declaration of paternity form at Child's birth.[1]

¶ 4 Grandparents and Mr. Goings dispute the level at which Mr. Goings was involved in Child's life. Specifically, Grandparents allege that Mr. Goings was not present at Child's birth, that he never visited Mother and Child at the hospital when Child was born, that he paid no birth expenses, and that he refused to acknowledge Child as his own. Further, they allege that Mr. Goings "physically and emotionally abused" Mother, that Mother was afraid of him, and that "[h]e threatened her into never taking any paternity action against him and told her that if she did, he 'would find ways to have the child taken from her.'" They admit that Mother and Child lived with Mr. Goings for a short time in 2006, but they claim that, during this time, Mother paid rent to Mr. Goings and that Mr. Goings's girlfriend also lived in the home. They also allege that Mr. Goings has never paid child support. They claim that Child lived with Mother and her fiancé in an apartment for most of 2007.

¶ 5 On the other hand, Mr. Goings claims that he was "highly involved" in Child's life. He states that Mother and Child lived in his home for about six months, and that after they moved out, he "remained a part" of Child's life, "saw him on a regular basis," and watched Child two or three nights each week while Mother worked. Mr. Goings also states that he "helped financially support [Child] by buying food, groceries, [and] diapers."

¶ 6 In April of 2008, Mother was diagnosed with terminal lung cancer. Upon learning of her diagnosis, she, her fiancé, and Child moved out of the apartment they shared and moved in with Grandparents. And in anticipation of her death, Mother prepared a testamentary appointment of guardianship and conservatorship of Child in favor of Grandparents. Her testamentary appointment provided as follows:

> I, [Mother] . . . being of sound mind and having the ability to make informed deci-

---

1. *See* UTAH CODE § 26–2–5(5)(a)(i) (requiring hospital administrators to provide unmarried birth mothers and declarant fathers, if present, with an opportunity to sign a "declaration of paternity form" and "oral and written notice . . . of the alternatives to, the legal consequences of, and the rights and responsibilities that arise from signing the declaration").

sions and choices, desire to make my wishes and directives known with regard to the Permanent Legal Custody and Guardianship of my natural minor son. It is my understanding that I have an untreatable cancer and my death is eminent. It is my directive that Permanent Legal[ ] Custody and Guardianship of my natural minor son, [Child,] born August 20, 2005 be given to [Grandparents].

The natural father of my son, Danny Goings[,] has had no involvement with my son since birth. He is not an appropriate and fit parent to raise my natural minor son [Child].

Mr. Goings was not notified of Mother's testamentary appointment.

¶ 7 Mother died on June 19, 2008, and Grandparents took Child home with them after Mother's funeral. The next week, Grandparents filed a petition for appointment of guardianship (Guardianship Petition or Petition) to confirm and accept Mother's testamentary appointment of them as guardians and conservators of Child (Guardianship Action). On July 2, 2008, the district court confirmed their appointment (Guardianship Appointment). Later the same day, unaware of the Guardianship Action, Mr. Goings filed a separate action, before a different judge, to establish his paternity of Child in the district court (Paternity Action).[2]

¶ 8 On July 7, 2008, Mr. Goings learned that Grandparents had been appointed as Child's guardians, and on July 8, he filed a motion to vacate the Guardianship Appointment. In his supporting memorandum, he argued that the Guardianship Appointment should be vacated because he had not received notice of the Guardianship Petition as required under section 75-5-207 of the Utah Code (Court Appointment Statute). As part

of his notice argument under the Court Appointment Statute, he asserted that Grandparents obtained the confirmation of their appointment based on "false and misleading information." But while the Court Appointment Statute governs guardianship appointments made by a court, section 75-5-202.5 of the Utah Code (Testamentary Appointment Statute) governs guardianship appointments made by a parent.[3] Mr. Goings did not make any arguments related to the Testamentary Appointment Statute, under which Mother appointed Grandparents as Child's guardians.

¶ 9 In the Guardianship Action, the court summarily denied Mr. Goings's motion to vacate in an order dated January 5, 2009. Grandparents then filed a proposed order for the court to sign. But Mr. Goings filed an objection to the language in Grandparents' proposed order. In his objection, Mr. Goings attempted to present new arguments to support his position that the Guardianship Appointment should be vacated. Specifically, in his objection, Mr. Goings suggested for the first time that he had parental rights that were entitled to constitutional protection. The court ultimately denied his objection, explaining that it was "not well-taken" because it "primarily seeks to reargue issues" which had already been "considered and ruled upon" by the court in both the Guardianship Action and the Paternity Action. The court also noted that the "parties have had a full opportunity to develop the facts in the record and to present testimony, if they so chose."

¶ 10 Meanwhile, in the Paternity Action, on February 24, 2009—more than six months after Grandparents were confirmed as Child's guardians—the parties stipulated to

---

2. The judge presiding over the Paternity Action ruled that, because of privacy concerns, the two actions should not be consolidated.

3. The Court Appointment Statute applies when the court appoints a guardian for a minor. It is titled "Court appointment of guardian of minor—Procedure," and requires that "[n]otice of the time and place of hearing of a petition for the appointment of a guardian of a minor is to be given ... to ... the person who has had the principal care and custody of the minor during

the 60 days preceding the date of the petition [and] any living parent of the minor." UTAH CODE § 75-5-207(1)(b)-(c).

In contrast, the Testamentary Appointment Statute is titled "Appointment of guardian by written instrument," and permits a parent to appoint a guardian by written instrument. The Testamentary Appointment Statute does not require that notice be given to anyone before the testamentary appointment becomes effective. See UTAH CODE § 75-5-202.5.

the fact that Mr. Goings was Child's "biological and legal father." [4] As a result, the court adjudged Mr. Goings to be Child's legal father and ordered him to make back payments and ongoing child support payments to Grandparents. Mr. Goings has not yet made any payments.

¶ 11 Ultimately, in the Guardianship Action, the court denied both of Mr. Goings's motions to vacate the Guardianship Appointment,[5] concluding that the Guardianship Appointment was valid under the Testamentary Appointment Statute. Accordingly, the court rejected Mr. Goings's notice argument, noting that under the Testamentary Appointment Statute, "[p]arental testamentary appointments of guardianship do not have a notice requirement prior to confirmation under Utah law." Further, the court found that, having failed to timely file his Paternity Action, Mr. Goings "was not entitled to legal recognition as a parent under Utah law" at the time the Guardianship Appointment was confirmed. The court found that Mr. Goings's legal status was instead that of an "alleged father." Thus, the court reconfirmed the validity of Grandparents' appointment as Child's guardians.

¶ 12 Mr. Goings appealed to the Utah Court of Appeals. But his brief to the court of appeals contained numerous errors, including failing to cite to the record, failing to include page numbers in the Table of Contents or Table of Authorities, and failing to comply with other formatting requirements. In their response brief, Grandparents called the attention of the court to these deficiencies. Mr. Goings responded by filing a motion to amend the brief and attaching a copy of an amended brief in which he had corrected many of the errors. The court of appeals granted the motion, allowing Mr. Goings to file an amended brief, but also requiring his counsel to pay the Grandparents "their reasonable attorneys fees for the work expended in researching and preparing that portion of their brief devoted to demonstrating the inadequacy" of Mr. Goings's brief. The court of appeals then temporarily remanded the matter to the district court for a determination of reasonable attorney fees. Mr. Goings's counsel has not yet paid the Grandparents any portion of the amount the district court ultimately ordered him to pay.

¶ 13 Shortly thereafter, the court of appeals certified this case to us. Accordingly, we issued an order on January 17, 2012, granting the parties permission "to submit supplemental or replacement briefs if they choose." But we explained that "such a brief should be submitted only if the posture before the Supreme Court creates a material difference in the argument presented."

¶ 14 Mr. Goings's counsel submitted a supplemental brief, in which he acknowledges that "there is no material difference in the arguments as presented in Mr. Goings'[s] brief previously filed in this matter due to the certification and transfer of this case to the Supreme Court." But Mr. Goings's counsel goes on to argue that, under rule 40(b) of the Utah Rules of Appellate Procedure, the court of appeals should not have sanctioned him without providing him with notice and an opportunity for a hearing. Under section 78A–3–102(3)(b) of the Utah Code, we have jurisdiction to review the district court's actions.

## STANDARD OF REVIEW

■■■ ¶ 15 We review questions of statutory interpretation for correctness.[6] And generally, we will only review an issue on appeal if it has been preserved.[7] When a

---

4. The parties entered into this stipulation after DNA testing had proved that Mr. Goings was indeed Child's biological father.

5. Before the court had ruled on Mr. Goings's objections to the language in the proposed order denying his motion to vacate the Guardianship Appointment, Mr. Goings filed a renewed motion to vacate, but he mistakenly filed it in the Paternity Action instead of the Guardianship Action. Because Mr. Goings's arguments were the same in both motions, and because it does not affect the outcome of this case, we do not address the question of whether it would be appropriate for us to consider a motion erroneously filed in a different proceeding.

6. *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter–Day Saints*, 2007 UT 42, ¶ 46, 164 P.3d 384.

7. *See Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366.

party raises an issue on appeal that was not preserved below, we review it under the plain error standard.[8] Under our plain error review, we may reverse the lower court on an issue that was not properly preserved if a party can show that: "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the party."[9]

## ANALYSIS

¶ 16 Mr. Goings appeals the district court's denial of his motion to vacate the Guardianship Appointment. We first consider whether Mr. Goings has standing to bring this appeal. Next, because Mr. Goings did not preserve any of the issues he presents to us, we consider whether the court committed plain error in denying his motion to vacate the Guardianship Appointment. Finally, we do not consider whether the court of appeals properly sanctioned Mr. Goings's counsel because we lack jurisdiction to consider this issue.

### I. MR. GOINGS RECEIVED STATUTORILY GRANTED INTERVENOR STATUS WHEN HE FILED HIS OBJECTION TO THE GUARDIANSHIP APPOINTMENT

¶ 17 Grandparents argue that, because Mr. Goings was not Child's legal parent at the time Grandparents were appointed as guardians, and because he never formally filed a motion to intervene in this case, he lacked standing to object to the Guardianship Appointment. Accordingly, Grandparents argue that Mr. Goings lacks standing to bring this appeal. We disagree.

8. *Id.* ¶ 16.

9. *Id.* (alterations omitted) (internal quotation marks omitted).

10. We note that neither the district court nor Grandparents ever suggested that Mr. Goings's motion was not properly filed as an objection under section 75–5–203 of the Utah Code.

11. Mr. Goings alternatively argues that we should reach the merits of his arguments by creating an exception to our preservation rule for

¶ 18 Section 75–5–203 of the Utah Code permits "[a]ny person interested in the welfare of a minor" to file a written objection to a guardianship appointment. Thus, section 75–5–203 provides a statutory right to object to a guardianship appointment. Further, the statute confers intervenor status on any person who files an objection pursuant to it.

¶ 19 In this case, Mr. Goings challenged the Guardianship Appointment with a motion to vacate. Because the statute permits "any person interested in the welfare of" Child to object to the Guardianship Appointment, Mr. Goings was entitled to challenge the appointment regardless of whether or not he was Child's legal parent at that time. Further, although he captioned his motion as a "motion to vacate" rather than an "objection," we consider his motion to be an objection filed pursuant to section 75–5–203.[10] Accordingly, when he filed his objection, Mr. Goings received statutory intervenor status in this case. He thus has standing to bring this appeal.

### II. MR. GOINGS DID NOT PRESERVE HIS CHALLENGES TO THE DISTRICT COURT'S DENIAL OF HIS MOTION TO VACATE THE GUARDIANSHIP APPOINTMENT, AND HE HAS NOT DEMONSTRATED THAT THE DISTRICT COURT COMMITTED PLAIN ERROR WHEN IT DENIED HIS MOTION

¶ 20 Acknowledging that he did not preserve most of the issues he presents in his brief, Mr. Goings argues that we should nonetheless reach them because the district court committed plain error in denying his motion to vacate the Guardianship Appointment.[11] Specifically, he argues that the dis-

issues that relate to the "best interest of a child." He conflates this with the parental presumption, which arises in "child custody disputes between natural parents and persons other than natural parents," and provides that "there is a presumption in favor of a natural parent who has the care, custody, and control of his or her child." *Kishpaugh v. Kishpaugh*, 745 P.2d 1248, 1250 (Utah 1987). Mr. Goings argues that "[a]s [Grandparents] have never rebutted the parental presumption, it is appropriate for this Court to

trict court erred in denying his motion because (A) the court erred in determining that he was not a "parent," and accordingly, the Guardianship Petition was facially invalid because it failed to make the required statutory assertions; (B) the Petition contained fraudulent assertions; and (C) even if they were entitled to guardianship, Grandparents were not entitled to custody of Child.

¶ 21 To preserve an issue for appeal, "the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." [12] To provide the court this opportunity, "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority." [13] A party may not preserve an issue by "merely mentioning" it.[14] We have explained that "[u]ltimately, the preservation requirement is based on the premise that, in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it." [15]

¶ 22 Thus, when a party raises an issue on appeal that was not preserved below, we review it for plain error.[16] "Under plain error review, we may reverse the lower court on an issue not properly preserved" only if the party shows that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the party." [17] "An error is obvious only if the law governing the error was clear at the time the alleged error was made." [18] In this case, Mr. Goings did not preserve the four arguments he presents on appeal, and he failed to show that the court committed plain error in denying his motion to vacate the Guardianship Petition.

*A.  Because the District Court Did Not Commit an Obvious Error When It Determined That Mr. Goings Was not Child's Legal Parent, Mr. Goings Did not Show that the Court Committed Plain Error When It Declined to Vacate the Guardianship Appointment*

¶ 23 In denying Mr. Goings's motion to vacate the Guardianship Appointment, the district court concluded that he was not Child's legal parent because he had not established a parent-child relationship in one of the ways enumerated in the Utah Uniform Probate Code (Probate Code). Specifically, the court noted that "[n]o father is named on the birth certificate.... Mr. Goings [never] voluntarily execute[d] or file[d] ... a Declaration of Paternity.... [nor did he] adjudicate his paternity.... [or] meet any of the Utah Uniform Parentage Act requirements to be acknowledged as a presumed legal father." Accordingly, the district court concluded that, at the time of the Guardianship Appointment, Mr. Goings was not a "parent," but was instead an "alleged father." [19]

consider this issue regardless of whether the claim was otherwise preserved."

The Utah Court of Appeals has recognized an exception to the preservation rule "when the central issue to be decided concerns the best interests of a child." *T.B. v. M.M.J. (State ex rel. R.N.J.)*, 908 P.2d 345, 350 (Utah Ct.App.1995) *superseded by statute on other grounds as stated in M.B. v. C.E.H. (In re E.H.H.)*, 2000 UT App 368, ¶ 16, 16 P.3d 1257. But we have never recognized this exception. In fact, we recently declined to consider an unpreserved issue even though it affected the interests of a minor. *A.O. v. State (State ex rel. K.F.)*, 2009 UT 4, ¶¶ 1, 59, 201 P.3d 985 (declining to review the juvenile court's decision to change a minor's custodial situation because "the mother clearly did not preserve a challenge to the adequacy of the juvenile court's findings"). Accordingly, we decline to recognize such an exception to our preservation requirement.

12.  *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (internal quotation marks omitted).

13.  *Id.* (internal quotation marks omitted).

14.  *Id.* (internal quotation marks omitted).

15.  *Id.* (internal quotation marks omitted).

16.  *Id.* ¶ 16.

17.  *Id.* (alterations omitted) (internal quotation marks omitted).

18.  *State v. Maestas*, 2012 UT 46, ¶ 37, —— P.3d ——, 2012 WL 3176383 (internal quotation marks omitted).

19.  *See* UTAH CODE § 78B–15–102(2) (" 'Alleged father' means a man who alleges himself to be, or

¶ 24 On appeal, Mr. Goings argues that because he is Child's biological father, and because he "developed and maintained a substantial relationship" with Child, he was Child's legal parent at the time Grandparents were appointed as guardians. Thus, he asserts that the district court deprived him of parental rights without due process of law when it considered only whether Mr. Goings had established his legal parentage in one of the ways enumerated in the Probate Code "without allowing for any other basis" for showing that he was Child's legal parent.

¶ 25 In connection with this argument, Mr. Goings argues that the Guardianship Petition is invalid because it did not assert that he had been adjudged incapacitated as required by the Testamentary Appointment Statute, under which newly appointed guardians must file an affidavit of acceptance stating "the names of the parents of the minor and that both are dead or that any surviving parent has been adjudged incapacitated."[20] Accordingly, Mr. Goings concludes that the Petition was invalid because he is alive and the Petition failed to allege that he has been adjudged incapacitated. Thus, he argues that the court erred in denying his motion to vacate the Guardianship Appointment.

¶ 26 We first consider whether Mr. Goings preserved these issues. To preserve an issue for appeal, "the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue."[21] To provide this opportunity, the issue must be specifically raised in a timely fashion and supported with evidence or relevant legal authority.[22]

¶ 27 In this case, Mr. Goings never specifically argued before the district court that the Petition was invalid because it did not state that Child's parents are both dead or that he, as the surviving parent, had been adjudged incapacitated, as the Testamentary Appointment Statute requires.[23] Indeed, he never invoked the Testamentary Appointment Statute at all. Mr. Goings concedes that "he did not specifically raise the question" in the district court. Instead, in his motions to the district court, Mr. Goings asserted that the Petition was invalid only because he had not received notice as Child's "parent." Specifically, Mr. Goings argued that he was entitled to notice of the Guardianship Appointment under the Court Appointment Statute, which provides that "[n]otice of the time and place of [a] hearing" regarding a guardianship appointment must be given to "the person who has had the principal care and custody of the minor during the 60 days preceding the date of the petition [and] any living parent of the minor."[24] Moreover, in seeking to vacate the Guardianship Appointment before the district court, Mr. Goings never mentioned due process, the Utah Constitution, or the U.S. Constitution. Further, he never cited any case law that would support the due process argument he presents on appeal.

¶ 28 Thus, although the district court found that Mr. Goings was an "alleged father" rather than Child's legal parent, it did so in the context of his notice claim under the Court Appointment Statute. It never made that finding for purposes of a claim under the Testamentary Appointment Statute. Indeed, the district court never had the opportunity to rule on Mr. Goings's claim that the Petition was invalid for failing to make the required assertion that Child's parents are dead or adjudged incapacitated. Nor did the court have the opportunity to rule on his related claim that the court violated due process principles when it considered only the

is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined.").

20. *Id.* § 75–5–202.5(1)(b)(iii). Because the Petition is notarized and contains the remainder of the information required under the Testamentary Appointment Statute, we consider it to be Grandparents' affidavit of acceptance.

21. *Pratt*, 2007 UT 41, ¶ 15, 164 P.3d 366 (internal quotation marks omitted).

22. *Id.*

23. *See* UTAH CODE § 75–5–202.5(1)(b)(iii)–(iv).

24. UTAH CODE § 75–5–207(1)(b)–(c). We note that Mr. Goings's argument was flawed because Grandparents were not appointed under the Court Appointment Statute. Instead, they were appointed under the Testamentary Appointment Statute, which does not require that notice be provided to any person before the appointment becomes effective. *See supra* ¶ 8 & n. 3.

ways enumerated by statute in determining whether he was Child's legal parent. Accordingly, because Mr. Goings neither specifically raised these arguments before the district court nor introduced evidence or legal authority to support them, we conclude that he did not preserve them.

¶ 29 Second, having concluded that Mr. Goings did not preserve these issues, we consider whether the court committed plain error when it confirmed the Guardianship Appointment even though the Petition did not allege that Mr. Goings had been adjudged incapacitated. To show that the court committed plain error, Mr. Goings must show not only that an error exists, but also that "the error should have been obvious to the trial court." [25] "An error is obvious only if the law governing the error was clear at the time the alleged error was made." [26] We conclude that Mr. Goings has failed to make this showing because he has not demonstrated that the court committed an obvious error.

¶ 30 In defining "parent," the Probate Code relies on language in other sections of the Utah Code. Specifically, the Probate Code defines "parent" as "any person ... who would be entitled to take if the child died without a will." [27] Turning to another section of the Probate Code, a biological father is entitled to inherit from a child who died without a will only if he: (1) "openly treated the child as his, and has not refused to support the child," or (2) established a parent-child relationship as provided in the Parentage Act.[28] And the Parentage Act provides several ways a biological father may establish this parent-child relationship, including by filing a declaration of paternity or by adopting the child.[29] Thus, a biological father is a "parent" under the Probate Code only if he has either "openly treated the child as his, and has not refused to support the child," or established a parent-child relationship in one of the ways enumerated in the Parentage Act.

¶ 31 But Mr. Goings asserts that the district court was required to consider whether he had established his legal parentage in some additional way.[30] Indeed, the U.S. Supreme Court has held that state law may define the ways in which an unwed biological father may establish a constitutionally protected parent-child relationship.[31] Similarly, we have noted that "due process guarantees an unwed natural father the right to preserve his parental opportunity by following state procedures," and that an unwed father risks losing "constitutionally protectable parental rights" if he "fails to comply with the procedures available to protect" those rights.[32] But the Testamentary Appointment Statute does not define "parent" for its purposes. And we have never interpreted that statute's use of "parent" as referring *either* to someone who satisfies the Probate Code's definition of "parent" *or* someone who establishes parentage in the ways Mr. Goings suggests are satisfactory. Further, although we have recognized that due process principles might be violated if a putative father's biological

25. *Pratt*, 2007 UT 41, ¶ 16, 164 P.3d 366 (internal quotation marks omitted).

26. *Maestas*, 2012 UT 46, ¶ 37, —— P.3d —— (internal quotation marks omitted).

27. UTAH CODE § 75-1-201(33).

28. *Id.* § 75-2-114(1), (3).

29. *Id.* § 78B-15-201(2).

30. Although Mr. Goings also argues that the court "erred when it failed to allow for an evidentiary hearing to determine whether [he] had developed a legally sufficient relationship with [Child] prior to granting custody to [Grandparents]," he does not assert that he ever requested such a hearing or that the court denied his request. And there is nothing in the relevant statutes or our case law to suggest that a court must, sua sponte, hold an evidentiary hearing to determine whether an alleged father has "developed a legally sufficient relationship" with his biological child. Accordingly, we conclude that the court did not commit an obvious error in failing to do so.

31. *Lehr v. Robertson*, 463 U.S. 248, 256, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *see also Thurnwald v. A.E.*, 2007 UT 38, ¶ 26, 163 P.3d 623 (noting that "[i]n *Lehr*, the United States Supreme Court recognized that individual states may define when an unwed father has grasped [the] opportunity" to establish a constitutionally protected relationship with his child).

32. *T.M. v. B.B.* (*In re Adoption of T.B.*), 2010 UT 42, ¶ 40, 232 P.3d 1026.

child is adopted without his consent, we have never held that the same concerns arise in guardianship proceedings.[33] Thus, the law governing this issue did not clearly require the district court to look to the Probate Code or to look outside the Probate Code to determine whether Mr. Goings was Child's legal parent. Governing law likewise does not clearly make a guardianship appointment under these circumstances a violation of a biological parent's due process rights. Accordingly, we cannot conclude that the district court committed an obvious error in failing to determine that Mr. Goings was a "parent" for purposes of the Testamentary Appointment Statute or that due process requires more process than he received in this case. Thus, we conclude that the court did not commit plain error in affirming the Grandparents' appointment even though the Petition did not assert that Mr. Goings had been adjudicated incapacitated.

B. *Because the Allegedly False Assertions in the Petition Were not Significant or Essential to Its Validity, Mr. Goings Failed to Show That the District Court Committed Plain Error When It Declined to Vacate the Guardianship Appointment*

¶ 32 On appeal, Mr. Goings argues that the Guardianship Petition contained fraudulent assertions, and that the district court therefore erred in confirming the Guardianship Appointment. Specifically, Grandparents stated in their Petition that Mr. Goings "has never declared paternity, was never married

to [Mother], is not an adjudicated father, and has not lived with nor provided child support to the minor." Mr. Goings argues that "[a]t the time of their Petition, [Grandparents] knew or had reason to know that [Child] had in fact lived in Mr. Goings'[s] home for the majority of his life and that Mr. Goings had provided substantial financial and familial support throughout [Child's] life." He contends that "[a]fter learning that [Grandparents] had made false statements in their Petition concerning Mr. Goings'[s] relationship with [Child]," the court "rightfully should have struck [Grandparents'] pleadings" and vacated the Guardianship Appointment.

¶ 33 We first consider whether Mr. Goings preserved this issue.[34] Before the district court, although Mr. Goings alleged that Grandparents knowingly made false representations in the Petition, he did not specifically raise his fraud argument or introduce relevant legal authority. Specifically, Mr. Goings alleged that Grandparents obtained the Guardianship Appointment based on "false and misleading information and contrary to the procedural requirements of" the Court Appointment Statute.[35] He also asserted facts that, if true, could tend to disprove some of the statements made by Grandparents. But Mr. Goings never argued that his statements related to the elements of fraud.[36] Further, he provided no support for his assertion that a court must vacate a guardianship appointment that contains false assertions. Thus, we conclude that the district court did not have the oppor-

---

33. *See id.* ¶ 43 (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) and *Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979)).

34. As discussed above, to preserve an issue for appeal, "the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Pratt*, 2007 UT 41, ¶ 15, 164 P.3d 366 (internal quotation marks omitted). Specifically, the issue must be specifically raised in a timely fashion and supported with evidence or relevant legal authority. *Id.*

35. We note, again, that Grandparents were appointed under the Testamentary Appointment Statute and not the Court Appointment Statute. *See supra* ¶ 8 & n. 3.

36. *See Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 53 n. 38, 201 P.3d 966 ("The elements of a fraud claim include the following: (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage." (emphasis omitted) (internal quotation marks omitted)).

tunity to rule on Mr. Goings's claim that the Petition should have been vacated because it was fraudulent, and accordingly, we conclude that this claim was not preserved.

¶ 34 Second, having concluded that Mr. Goings did not preserve this issue, we consider whether the court committed plain error when it did not vacate the Guardianship Appointment after learning that the Petition contained allegedly false assertions.[37] We conclude that Mr. Goings has failed to make this showing because he has not demonstrated that the court committed an error.

¶ 35 Fraud involves "a false representation of an existing material fact."[38] And a fact is material only if it is "significant or essential to the issue or matter at hand."[39] Accordingly, whether the allegedly false assertions in the Petition were fraudulent depends upon whether they were "significant or essential" to the Petition.

¶ 36 Under the Testamentary Appointment Statute, a testamentary appointment becomes effective when the appointment is filed with the court and the newly appointed guardian files a document that contains six particular assertions.[40] Specifically, the statute requires the document to contain the following: (i) information related to the minor; (ii) information related to the newly appointed guardian, (iii) "the names of the parents of the minor and that both are dead or that any surviving parent has been adjudged incapacitated," (iv) "the name of the parent who was last to die and the county where that parent resided at the date of his death," (v) a statement that there is not a superseding appointment of guardianship, and (vi) a statement that the newly appointed guardian "accepts the appointment."[41]

¶ 37 These are the only assertions that the statute requires a newly appointed guardian to make before a testamentary appointment can become effective. The statute requires no assertions regarding whether an alleged father has lived with or provided support for the minor. Thus, we conclude that assertions regarding an alleged father's involvement in a minor's life are not "significant or essential" to the validity of a guardianship petition under the Testamentary Appointment Statute. Accordingly, even if they are allegedly false, such statements do not constitute fraud. Consequently, Mr. Goings has not shown that an error exists in the district court's decision to confirm the Guardianship Appointment, and thus, he has failed to show that the court committed plain error in declining to vacate the Petition on that basis.

*C. Because Guardianship Includes Custody, Mr. Goings Has not Demonstrated That the Court Committed Plain Error When It Awarded Custody to Grandparents*

¶ 38 Finally, Mr. Goings argues that, even if the court did not err when it declined to vacate the Guardianship Appointment, it erred in awarding custody of Child to Grandparents. Specifically, Mr. Goings argues that a guardian of a minor is not necessarily entitled to custody.

¶ 39 First, we consider whether Mr. Goings preserved this issue.[42] Before the district court, Mr. Goings never argued that Grandparents were not entitled to custody as guardians or that the court erred in awarding custody to Grandparents. Indeed, although Mr. Goings asserts that he preserved

---

37. As discussed above, to show that the court committed plain error, Mr. Goings must show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *Pratt*, 2007 UT 41, ¶ 16, 164 P.3d 366 (alteration omitted) (internal quotation marks omitted).

38. *Atkinson v. IHC Hosps., Inc.*, 798 P.2d 733, 737 (Utah 1990) (internal quotation marks omitted); *see also Giusti*, 2009 UT 2, ¶ 53 n. 38, 201 P.3d 966 (listing the elements of fraud).

39. BLACK'S LAW DICTIONARY 670 (9th ed.2009).

40. UTAH CODE § 75–5–202.5(1). We consider the Petition to be the document required under the Testamentary Appointment Statute. *See supra* ¶ 25 n. 20.

41. UTAH CODE § 75–5–202.5(1)(b).

42. As discussed above, to preserve an issue for appeal, the issue must be specifically raised in a timely fashion and supported with evidence or relevant legal authority. *Pratt*, 2007 UT 41, ¶ 15, 164 P.3d 366.

this issue in his initial motion to vacate the Guardianship Appointment, he mentioned "custody" in that motion only in the context of his assertion that he "had principal care and custody of [Child] for more than 60 days preceding the date of the petition." Accordingly, we conclude that Mr. Goings did not preserve this issue for appeal.

¶ 40 Second, we consider whether the court committed plain error when it awarded custody of Child to Grandparents.[43] We conclude that Mr. Goings has failed to make this showing because he has not demonstrated that the court committed an error.

¶ 41 Our "primary objective" in interpreting statutes "is to give effect to the legislature's intent. To discern legislative intent, we look first to the statute's plain language."[44] And "[w]hen the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed."[45]

¶ 42 Section 75-5-209(2) of the Utah Code provides that a guardian "has the powers and responsibilities of a parent who has not been deprived of custody." Thus, guardianship of a minor, by its very nature, includes custody of the minor. Accordingly, Mr. Goings has not shown that an error exists in the district court's decision to award custody of Child to Grandparents, and we conclude that the court did not commit plain error in making that decision.

## III. BECAUSE MR. GOINGS'S COUNSEL FAILED TO FILE A PETITION FOR EXTRAORDINARY RELIEF, WE LACK JURISDICTION TO CONSIDER WHETHER IT WAS PROPER FOR THE COURT OF APPEALS TO SANCTION HIM

¶ 43 Mr. Goings's counsel argues that the court of appeals erred in requiring him to pay attorney fees to Grandparents without first providing him with notice and a hearing. As discussed below, we lack jurisdiction over this matter because Mr. Goings's counsel failed to invoke our jurisdiction. But even if we had jurisdiction, we would decline to consider this issue because it is outside the scope of our order permitting supplemental briefing and is therefore not properly before us.

¶ 44 After the court of appeals certified this case to us, we issued an order granting the parties permission "to submit supplemental or replacement briefs if they so choose," but stated that "such a brief should be submitted only if the posture before the Supreme Court creates a material difference in the argument presented." Pursuant to that order, Mr. Goings's counsel submitted a supplemental brief, in which he argues that the court of appeals should not have sanctioned him without providing him with notice and an opportunity for a hearing. Specifically, Mr. Goings's counsel relies on rule 40(b) of the Utah Rules of Appellate Procedure, which provides that "[t]he court may, after reasonable notice and an opportunity to show cause to the contrary, and upon hearing, if requested, take appropriate action against any attorney . . . for failure to comply with the[ ] rules." Thus, Mr. Goings's counsel claims that the Utah Court of Appeals improperly sanctioned him because he "was not provided prior notice or any opportunity to show cause or allowed to request a hearing on the issue," and therefore he "has been effectively sanctioned in this case without due process of law and in direct violation of [r]ule 40(b)."

¶ 45 Our "appellate jurisdiction must be contemporaneously and properly invoked by some distinct method" before we may review the decision of a lower court.[46] Generally, to invoke our jurisdiction to review a decision of the court of appeals, a party must file a petition for a writ of certio-

---

43. As discussed above, to show that the court committed plain error, Mr. Goings must show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *Id.* ¶ 16 (alteration omitted) (internal quotation marks omitted).

44. *LPI Servs. v. McGee,* 2009 UT 41, ¶ 11, 215 P.3d 135 (internal quotation marks omitted).

45. *Id.*

46. *Snow, Christensen & Martineau v. Lindberg,* 2009 UT 72, ¶ 6, 222 P.3d 1141.

rari.[47] Alternatively, in some situations, a party may invoke our jurisdiction by filing a petition for extraordinary relief.[48]

¶ 46 In this case, Mr. Goings appealed the district court's decision to reconfirm the validity of the Guardianship Appointment, and the court of appeals certified the case to us.[49] That transfer invoked our jurisdiction to review the district court's actions regarding the Guardianship Appointment. It did not invoke our jurisdiction to review the sanctions that the court of appeals imposed on Mr. Goings's counsel. Indeed, unless it is separately invoked, we lack jurisdiction to consider issues beyond those presented in the case certified to us by the court of appeals.[50] And Mr. Goings's counsel failed to separately invoke our jurisdiction to review the sanctions issue.

¶ 47 We note that the traditional method of invoking our appellate jurisdiction to review the sanctions issue was foreclosed in this case. Because the underlying issues in Mr. Goings's appeal had not yet been resolved, his counsel could not have challenged the court of appeals' sanctions with a petition for a writ of certiorari.[51] But there is no reason that Mr. Goings's counsel could not have invoked our jurisdiction by filing a petition for extraordinary relief. Because he did not do so, he failed to invoke our jurisdiction to review the sanctions issue.[52] Accordingly, our jurisdiction in this case is limited to the issues Mr. Goings raised in his original appeal of the district court's order. We lack jurisdiction to consider whether it was proper for the court of appeals to sanction Mr. Goings's counsel.

■ ¶ 48 But even if Mr. Goings's counsel had properly invoked our jurisdiction to review the sanctions issue, we would decline to consider it. We granted the parties permission to submit supplemental briefs only "if the posture before the Supreme Court creates a material difference in the argument presented." And in this case, the posture before our court does not create a material difference in the arguments the parties presented. In fact, the supplemental brief submitted by Mr. Goings's counsel explicitly acknowledges that "there is no material difference in the arguments as presented in Mr. Goings'[s] brief previously filed in this matter due to the certification and transfer of this case to the Supreme Court of the State of Utah." Similarly, Grandparents point out that "neither they nor Mr. Goings have cause to raise anything which would amount to a material difference in the arguments presented in the amended initial briefing." Accordingly, they "do not believe this is a proper matter for Mr. Goings to raise in supplemental briefing." We agree.

¶ 49 Nonetheless, Mr. Goings's counsel attempts to argue that the posture before the Supreme Court creates a material difference regarding the issue of the sanction imposed

47. UTAH R.APP. P. 45 ("Unless otherwise provided by law, the review of a [decision] of the Court of Appeals shall be initiated by a petition for a writ of certiorari to the Supreme Court of Utah.").

48. UTAH R. CIV. P. 65B(a) ("Where no other plain, speedy and adequate remedy is available, a person may petition the court for extraordinary relief...."). We have also noted that "[t]here may be circumstances where limited provisional forms of relief (e.g., an emergency stay to preserve the status quo) can be obtained prior to the formal invocation of appellate jurisdiction." Snow, Christensen & Martineau, 2009 UT 72, ¶ 6, 222 P.3d 1141.

49. See UTAH R.APP. P. 43(a) ("In any case over which the Court of Appeals has original appellate jurisdiction, the court may, upon the affirmative vote of four judges of the court, certify a case for immediate transfer to the Supreme Court for determination.").

50. See State v. Redd, 1999 UT 108, ¶ 9, 992 P.2d 986 (noting that issues may not be "add[ed]" to the case certified to us by the court of appeals).

51. See State v. Epling, 2010 UT 53, ¶ 3, 240 P.3d 788 (per curiam) (concluding that an intermediate decision by the court of appeals could not be challenged until a final decision had been issued in the case).

52. Further, we note that Mr. Goings's counsel's failure to file a petition for extraordinary relief may have foreclosed our ability to ever review the sanctions issue. See Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Lindberg, 2010 UT 51, ¶ 24, 238 P.3d 1054 (noting that "[w]hile there is no fixed limitation period governing the time for filing extraordinary writs, they should be filed within a reasonable time after the act complained of has been done or refused" (alteration omitted) (internal quotation marks omitted)).

by the court of appeals. Thus, he qualifies his acknowledgment that "there is no material difference in the arguments" by stating that this is true "with the sole exception of the sanction and award of attorney fees against Mr. Goings'[s] counsel as ordered by the Utah Court of Appeals in this matter."

¶ 50 But the fact that this case is now before us instead of the court of appeals does not create a material difference in the arguments Mr. Goings originally presented regarding the Guardianship Action. In other words, the sanction imposed by the court of appeals does not relate to Mr. Goings's appeal of the district court's denial of his motion to vacate the Guardianship Appointment. Thus, the posture before this court does not create a material difference in the arguments Mr. Goings presented in his brief to the court of appeals.[53] Accordingly, this issue is not within the scope of our January 17, 2012 order granting the parties permission to submit supplemental briefing. Thus, even if Mr. Goings's counsel had properly invoked our jurisdiction over this issue, we would decline to consider it.

## CONCLUSION

¶ 51 We affirm the district court's denial of Mr. Goings's motion to vacate the confirmation of Grandparents as Child's guardians. We conclude that Mr. Goings received statutory intervenor status when he filed his objection to the Guardianship Appointment. But we also conclude that Mr. Goings did not preserve any of the issues he presents in this appeal, and that he failed to show that the court committed plain error in denying his motion to vacate the Guardianship Appointment. Finally, because we lack jurisdiction over the issue, we do not consider whether the court of appeals properly sanctioned Mr. Goings's counsel.

¶ 52 We note, however, that our opinion in this case does not terminate Mr. Goings's parental rights. Since the Guardianship Appointment, Mr. Goings has been adjudged Child's legal father. And as the district court noted, "Mr. Goings's parental rights arose upon his adjudication and are residual, noncustodial rights."[54] Further, we note that nothing in our opinion forecloses Mr. Goings's ability to petition the court for the removal of Grandparents as Child's guardians on the ground that this would be in Child's best interest.[55] The only question at issue in this case was whether the district court erred in denying Mr. Goings's motion to vacate the Guardianship Appointment. For the reasons discussed above, we conclude that it did not err in denying the motion.

Chief Justice DURRANT authored the opinion of the Court, in which Associate Chief Justice NEHRING, Justice DURHAM, Justice PARRISH, and Justice LEE joined.

---

53. Further, we note that the award of attorney fees does not affect Mr. Goings—instead, it affects his counsel. And although Grandparents may be affected by whether they receive the payment of the attorney fees they have been awarded by the district court, they may seek enforcement of the district court order through the proper channels.

54. *See* Utah Code § 75–5–209(5) ("A parent of a minor for whom a guardian is appointed retains residual parental rights and duties.").

55. *See id.* § 75–5–212(1) (providing that "[a]ny person interested in the welfare of a ward, or the ward, if 14 or more years of age, may petition for removal of a guardian on the ground that removal would be in the best interest of the ward").