2013 UT App 276

**STATE of Utah, Plaintiff and Appellee,**

v.

**De Royale JOHNSON, Defendant and Appellant.**

**No. 20110938–CA.**

Court of Appeals of Utah.

Nov. 21, 2013.

---

Samuel P. Newton, for Appellant.

John E. Swallow and Michelle I. Young, for Appellee.

Judge STEPHEN L. ROTH authored this Memorandum Decision, in which Judges J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

### Memorandum Decision

ROTH, Judge:

¶ 1 Defendant De Royale Johnson appeals from convictions for burglary, attempted theft, possession of a dangerous weapon, criminal mischief, and providing false information to a peace officer. He argues that the trial court committed reversible error under rule 17(b) of the Utah Rules of Criminal Procedure when it gave priority to an older criminal case, delaying Johnson's trial for two weeks. Because Johnson failed to preserve this issue for appeal, we affirm.

¶ 2 On July 9, 2010, Johnson was charged with burglary, attempted theft, possession of a dangerous weapon by a restricted person, providing false information to a law enforcement officer,[1] and criminal mischief. After making his initial appearance through counsel, Johnson moved to continue the proceedings several times. On other occasions, he refused to be transported to court for scheduled hearings, resulting in further delays. Finally, on June 13, 2011, Johnson appeared at a pretrial conference to set a trial date. The court set Johnson's trial "as a second-place, or third-place setting on the 6th and

7th of July" and scheduled a pretrial conference for June 30.

¶ 3 At the June 30 pretrial conference, the judge reminded both parties that "[t]here's a pretty good chance that the case set [in first position] for trial starting on the 6th of July is going to go in any event, so [Johnson's case] probably would have been bumped, but I'll know for sure Tuesday afternoon[, July 5]." He told Johnson's trial counsel to "check with the [court]" to "know for sure whether that trial is going," but indicated that "[i]t does not appear that [Johnson's trial] will go." The case with first priority on July 6 was *State v. Kuntz*, an older felony case that had been calendared two months earlier. *Kuntz* was two years old and involved witnesses that needed to be flown in from out of state.

¶ 4 After confirming that *Kuntz* was the case with priority over Johnson's, Johnson's attorney asked the court to schedule another pretrial conference in the event Johnson's trial had to be postponed:

> [Johnson's Counsel]: So, shall we set another pretrial conference on this?
>
> THE COURT: Yeah. Let's do that, that's a good idea. Let's continue the matter for two weeks [un]til the 14th of July at 8:30 for scheduling conference.
>
> THE CLERK: Do you want me to have [the prosecutor] call [Johnson's case] off, your Honor, or do you want to just have him leave it on just in case something happens?
>
> THE COURT: You know what, let's just leave it on, and I've—I've had attorneys represent that there's just no way this case is going to settle and all of a sudden, the day before, it settles. So we'll leave this on as a second-place setting, Kuntz is the first place.
>
> [Johnson's Counsel]: Though we'll still set a scheduling on the 14th?
>
> THE COURT: Yeah.

Johnson never voiced any objection to the court setting his case for trial in second position behind *Kuntz*.

---

1. This charge, a class B misdemeanor, was amended on July 20, 2010, to providing false information to a peace officer, a class A misdemeanor.

¶ 5 On July 6, the day set for trial in both this case and *Kuntz*, the court notified the parties that because *Kuntz* was ready to proceed, Johnson's trial would need to be rescheduled. Johnson's attorney objected, arguing that rule 17(b) of the Utah Rules of Criminal Procedure required that the court give Johnson, who was incarcerated at the time, priority for trial over the defendant in *Kuntz*, who was not. The prosecution responded that it had "called off" its witnesses the night before "when [it] realized that [Kuntz] was bumping [Johnson]" and that it was not ready to proceed with Johnson's case that day. The court reminded both parties that it had given *Kuntz* priority at the last scheduling conference, and it then rescheduled Johnson's trial for July 21. Johnson subsequently filed a motion to dismiss, arguing that the court's failure to schedule his trial according to rule 17(b) prejudiced his defense. The court denied the motion, and at trial, a jury found Johnson guilty on all counts. Johnson appeals.

¶ 6 Johnson argues that the "trial court erred when it continued [his] jury trial in violation of Rule 17(b) of the Rules of Criminal Procedure." Rule 17(b) provides that

[c]ases shall be set on the trial calendar to be tried in the following order:

(b)(1) misdemeanor cases when defendant is in custody;

(b)(2) felony cases when defendant is in custody;

(b)(3) felony cases when defendant is on bail or recognizance; and

(b)(4) misdemeanor cases when defendant is on bail or recognizance.

Utah R.Crim. P. 17(b). According to Johnson, the rule imposes a "non-discretionary prioritization of cases in which persons who are in custody take priority over those who are not." By failing to prioritize his case according to the rule, Johnson argues, the court "denied him two key results." First, because the State was not prepared to try Johnson's case, he "could have asked the

court to dismiss the matter" pursuant to rule 25. *See id.* R. 25(b)(1) (providing that courts "shall dismiss" a case when "[t]here is unreasonable or unconstitutional delay in bringing defendant to trial"). Second, Johnson asserts that the "pressure of having [his] case dismissed for [the prosecution's] lack of preparation ... motivated the potential for a misdemeanor plea bargain" substantially more favorable to Johnson than what was otherwise on the table. Failing to comply with rule 17(b), however, "effectively released any pressure the State felt about being prepared for trial and prevented Mr. Johnson from receiving the favorable plea bargain he sought in the case." As a result, Johnson argues, his conviction should be reversed.

¶ 7 Whether rule 17(b) requires trial courts to automatically displace a case already calendared for trial when a higher-priority case subsequently competes for the same trial date is a matter of first impression. Because Johnson has not properly preserved this issue for appeal, however, we do not reach it.[2] "To preserve an issue for appeal, 'the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.'" *In re A.T.I.G.*, 2012 UT 88, ¶ 21, 293 P.3d 276 (quoting *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366). "[M]erely mentioning" an issue at trial will not preserve it for appeal. *Id.* (citation and internal quotation marks omitted). Rather, "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority." *Id.* (citation and internal quotation marks omitted).

¶ 8 Johnson's claim is not preserved because he did not raise it "in a timely fashion." *See id.* (citation and internal quotation marks omitted). The timeliness requirement is "a pre-condition to appellate review because entertaining belatedly raised issues sanction[s] the practice of withholding

---

**2.** For purposes of argument, we assume without deciding that Johnson would be entitled to a remedy under the facts of this case had he properly preserved the issue for appeal. But we express some doubt whether the priorities set in

rule 17(b) are so rigid as to require trial judges to displace calendared cases every time a higher-priority case subsequently competes for the same trial date. That is a question for another day, however.

positions that should properly be presented to the trial court but which may be withheld for the purpose of seeking a reversal on appeal and a new trial or dismissal." *State v. Brown*, 856 P.2d 358, 361–62 (Utah Ct.App. 1993) (alteration in original) (citation and internal quotation marks omitted). In other words, the rule prevents "defendants from 'sandbagging' the prosecution" by waiting until the only available remedy for the alleged error is outright dismissal or a new trial. *See Salt Lake Cnty. v. Carlston*, 776 P.2d 653, 656 (Utah Ct.App.1989) (citation and internal quotation marks omitted). Accordingly, in *Carlston*, we held that a criminal defendant's challenge to the prosecutor's use of peremptory strikes was untimely and unpreserved because it was brought two weeks after her conviction. *Id.* at 654–56. We noted that requiring such challenges before the jury is empaneled allows courts to remedy any errors "simply by seating" any wrongfully struck juror instead of setting aside a conviction. *Id.* at 656; *accord State v. Valdez*, 2006 UT 39, ¶ 44, 140 P.3d 1219 (noting that challenges to jury composition "must be raised in such a manner that the trial court is able to fashion a remedy"). Similarly, Utah law requires that parties raise any objections to jury instructions "*before* the jury deliberations, not after." *State v. Parkin*, 742 P.2d 715, 716 (Utah Ct.App. 1987) (emphasis added); *see also* Utah R.Crim. P. 19(e) (providing that "[o]bjections to written instructions shall be made before the instructions are given to the jury" and that "[o]bjections to oral instructions may be made after they are given to the jury, but before the jury retires to consider its verdict"). This requirement " 'gives an opportunity for the [trial] court to correct ... any inadequacy in the instructions, so that the jury may consider the case on a proper basis.' " *Parkin*, 742 P.2d at 716 (quoting *State v. Kazda*, 545 P.2d 190, 192 (Utah 1976)).

¶ 9 Just as courts can easily correct a prosecutor's improper use of peremptory challenges or errors in jury instructions when objections are timely, trial judges can remedy scheduling errors without difficulty if counsel objects when cases are initially calendared or even at subsequent conferences held in advance of trial. The only remedy for a violation of rule 17(b) raised the day of trial or post-trial, however, is likely to be dismissal.

¶ 10 Here, like objections to peremptory strikes after the jury is empaneled or objections to jury instructions after the jury retires for deliberations, Johnson did not raise his objection "in such a manner that the trial court [was] able to fashion a remedy" for any potential rule 17(b) violation. *See Valdez*, 2006 UT 39, ¶ 44, 140 P.3d 1219. Rather, he waited until July 6, the morning of trial, before raising his rule 17(b) objection and filed a motion to dismiss five days later on July 11. Johnson's objection confronted the court with a Hobson's choice between bumping an older case with out-of-town witnesses ready to proceed or dismissing Johnson's case. The court had set Johnson's trial in second position weeks before, advising him on June 30 that there was "a pretty good chance" that the first-position *Kuntz* case would "bump[ ]" Johnson's July 6 trial date. The court even discussed the possibility of "call[ing] [Johnson's case] off" altogether. Ultimately, the court elected to leave Johnson's July 6 trial date undisturbed in the event that the *Kuntz* case settled. But the court clearly indicated that Johnson's case was "a second-place setting, Kuntz is the first place," and it was unlikely Johnson's trial would go forward on July 6. Not only did Johnson fail to raise his rule 17(b) objection at the pretrial conference, but he also asked the court to schedule another pretrial conference for July 14—more than one week after the original trial date. Even if unintentional, it is difficult to view the effect of Johnson's objection on the morning of trial as anything other than "sandbagging the prosecution," *see Carlston*, 776 P.2d at 656 (citation and internal quotation marks omitted), forcing a possible dismissal based on an alleged error the court might have remedied had Johnson raised the issue when the trial was originally calendared or even a week earlier at the final pretrial conference.

¶ 11 We therefore conclude that Johnson's rule 17(b) objection was untimely and unpreserved. As a result, we do not reach the issue of whether the court violated rule 17(b)

and prejudiced Johnson's defense.   The trial
court's judgment is affirmed.