**2015 UT App 187**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
SERGEY TYLER MILLETT,
Defendant and Appellant.

Memorandum Decision
No. 20130791-CA
Filed August 6, 2015

Fourth District Court, Provo Department
The Honorable Claudia Laycock
No. 091402497

Paul D. Dodd and Aaron P. Dodd, Attorneys
for Appellant

Sean D. Reyes and Deborah L. Bulkeley, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES J. FREDERIC VOROS JR. and KATE A.
TOOMEY concurred.

CHRISTIANSEN, Judge:

¶1 Sergey Tyler Millett appeals from his convictions for forcible sodomy and attempted rape. Millett argues that his trial counsel rendered ineffective assistance by failing to file a motion to suppress Millett's interview with police based on constitutionally deficient pre-interrogation warnings. We agree, and we therefore reverse his convictions and remand for a new trial.

BACKGROUND

¶2     Millett met a fourteen-year-old girl at a church function in the spring of 2009. Over the next few months, including after Millett turned eighteen, the two engaged in a series of sexual encounters involving Millett and the girl touching one another's genitals. In early August, the girl went to Millett's house, where they had a similar sexual encounter. The girl testified that she and Millett then discussed their relationship and that neither of them was sure that they wanted to be "boyfriend and girlfriend." Millett then asked the girl for oral sex. The girl testified that she did "[n]ot immediately" agree to engage in oral sex, but she "changed [her] mind" and "complied." Millett then asked the girl for sexual intercourse. She testified that Millett put on a condom and started to penetrate her vagina but stopped when she told him it hurt. A week later, Millett and the girl met at a park where they again touched one another's genitals but did not engage in oral or vaginal sex. A few days later, the girl's mother called the police to report an inappropriate relationship between Millett and the girl. Millett was charged with forcible sodomy, attempted rape, and six counts of forcible sexual abuse.

¶3     Soon thereafter, Millett was arrested on the charges and interviewed by Detective Gregg Ludlow in an interrogation room at the Utah County Jail. At the beginning of the interview, Detective Ludlow stated, "Okay. Well that's why I'm here today to talk to you about because you're in custody and I wanted to make sure you understand all your rights and stuff. You remember all that?" Millett responded, "Yeah." Detective Ludlow then stated, "You have the right to remain silent and anything you say can and will be used against you in a court of law. You understand all that? Okay. You understand all of 'em, right? You're okay talking to me?" Millett said "yes."

¶4     During the interview, Detective Ludlow accused Millett of "throwing a pissy fit" after the girl initially refused to engage in oral sex. Millett denied that he became upset but admitted that after the girl refused to perform oral sex, Millett told her to go home and that the two were "done."

¶5    Millett's trial counsel filed a motion in limine to exclude the entire police interview based on rules 403, 404(b), and 608(b) of the Utah Rules of Evidence. The trial judge granted the motion in part but allowed the jury to hear Millett's statements regarding the girl. At trial, the State played parts of the interview for the jury and Detective Ludlow testified about the interview. Detective Ludlow testified that he read Millett his *Miranda* rights and that Millett waived them. Detective Ludlow also testified that Millett admitted to telling the girl "that they would be done if she did not give into his demands."

¶6    The jury was instructed that an act of forcible sodomy, attempted rape, or forcible sexual abuse is without consent of the victim when the victim is fourteen years of age or older, but younger than eighteen years of age, and the defendant is more than three years older than the victim and entices or coerces the victim to submit or participate. *See* Utah Code Ann. § 76-5-406 (LexisNexis 2008). The jury convicted Millett of forcible sodomy and attempted rape but acquitted him on all counts of forcible sexual abuse. Millett appeals.

## ISSUE AND STANDARD OF REVIEW

¶7    Millett argues that he was deprived of his constitutional right to the effective assistance of counsel. When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and "we must decide whether [the] defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Tennyson*, 850 P.2d 461, 466 (Utah Ct. App. 1993).

## ANALYSIS

¶8    Millett claims he received ineffective assistance of counsel because his trial counsel failed to recognize that Millett did not receive proper *Miranda* warnings before his interview by police and failed to base the motion to exclude Millett's police

interview on the lack of constitutionally adequate pre-interrogation warnings.

¶9     To succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Templin*, 805 P.2d 182, 186 (Utah 1990). To establish that counsel's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This showing requires that the defendant overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. If deficiencies in counsel's performance are identified, the defendant must then show that a reasonable probability exists that, but for counsel's error, the result would have been different. *Id.* at 694.

*Deficient Performance*

¶10     Millett argues that trial counsel performed deficiently by failing to file a motion to suppress based on inadequate *Miranda* warnings. Millett asserts that trial counsel failed to recognize that his interrogation was not preceded by proper *Miranda* warnings and that trial counsel therefore unreasonably failed to file a motion to suppress on that basis.

¶11     First, trial counsel's failure to file a motion to suppress on this basis is not deficient performance unless Millett's *Miranda* warnings were inadequate. A suspect "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966); *see also State v. Strain*, 779 P.2d 221, 223 (Utah 1989). In *Miranda*, the Supreme Court held that "an individual held for police interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer

with him during interrogation . . . . [T]his warning is an absolute prerequisite to interrogation." 384 U.S. at 471. "No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right." *Id.* at 471–72. A person subject to custodial interrogation is entitled to full *Miranda* warnings and, where such warnings are not given, "any incriminating statements made . . . during the custodial interrogation are excluded from evidence." *State v. Levin*, 2006 UT 50, ¶ 1, 144 P.3d 1096.

¶12 Here, the record clearly demonstrates that Millett was in custody at the time he was interviewed by Detective Ludlow: Millett had been arrested and was interviewed in an interrogation room at the Utah County Jail. While Detective Ludlow informed Millett of his right to remain silent and warned Millett that anything he said might be used against him in a court of law, Detective Ludlow did not inform Millett that he had the right to an attorney or of his right to have an attorney appointed for him. Because Millett was in custody and Detective Ludlow did not fully inform Millett of his rights before interviewing him, the *Miranda* warnings provided to Millett were incomplete and therefore inadequate.

¶13 Having concluded that Millett was subjected to custodial interrogation without constitutionally adequate pre-interrogation warnings, we must determine whether trial counsel's failure to file a motion to suppress based on the inadequate *Miranda* warnings fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Although we recognize the strong presumption that counsel acted competently, "where a defendant can show that there was no conceivable legitimate tactical basis for counsel's deficient actions, the first prong of *Strickland* is satisfied." *State v. Snyder*, 860 P.2d 351, 359 (Utah Ct. App. 1993).

¶14 For example, in *Snyder*, the defendant appealed his conviction of two counts of lewdness involving a child, claiming that he was denied the effective assistance of counsel by reason

of trial counsel's failure to timely raise a *Miranda* objection. *Id.* at 352. The defendant's trial counsel had reviewed the videotape of the defendant's police interview and had heard the highly unsettling and damaging statements that the defendant had made during the interrogation. *Id.* at 359. The defendant's trial counsel also knew that this interview had not been preceded by the requisite *Miranda* warnings. *Id.* Nonetheless, the defendant's trial counsel, without any compelling explanation for his delay, failed to timely file a motion to suppress prior to trial. *Id.* Though defense counsel belatedly filed such a motion, the trial court denied the defendant's motion, and his statements were used against him at trial, both as substantive evidence and for impeachment purposes. *Id.* at 353. The defendant was found guilty and appealed. *Id.* This court reversed the conviction, stating, "A motion to suppress was necessary to insure that [the] defendant's incriminating and embarrassing admissions were withheld from the jury." *Id.* at 359. "Given that there [was] no legitimate trial tactic to be served by failing to comply with the filing requirement" of the Utah Rules of Criminal Procedure, we concluded that counsel's actions fell outside the wide range of professionally competent assistance. *Id.*

¶15 Just as in *Snyder*, we can conceive of no legitimate trial tactic underlying trial counsel's failure to file a motion to suppress based on the inadequate *Miranda* warnings here. During Millett's interview, he made a number of incriminating statements regarding his relationship with the girl. A motion to suppress appears to have been necessary to ensure that Millett's incriminating admissions, as well as Detective Ludlow's testimony about the interview, were withheld from the jury.

¶16 The State nevertheless argues that the decision not to file a motion to suppress was a tactical decision. The State argues that trial counsel had a clear strategic reason to forgo a motion to suppress because, had his interview been suppressed, Millett would have had to testify at trial to support his defense that the girl consented to the sexual conduct. Had he done so, the State observes, Millett would have risked cross-examination and

impeachment. We are not convinced that the failure to suppress Millett's admissions under *Miranda* was the result of any such strategy.

¶17    Trial counsel filed a motion in limine seeking to exclude the recording of Millett's interview from evidence. While trial counsel based that motion on the perceived inadmissibility of Millett's statements under the Utah Rules of Evidence, rather than under *Miranda*, that motion specifically sought to exclude the entirety of Millett's interview from evidence. Counsel's actions demonstrate a clear intent to have the interview excluded, belying the State's suggestion that counsel made a strategic decision to use some or all of Millett's police interview at trial. If trial counsel had recognized the inadequate *Miranda* warnings and filed a motion to suppress, she would likely have been successful in preventing Millett's self-incriminating statements from being admitted at trial. Further, suppression of the police interview would have prevented Detective Ludlow from testifying about the interview and testifying that Millett told the girl "that if she didn't go along with his plans for these sex acts, that he was done with her."

¶18    The State maintains that, at trial, trial counsel deliberately used the contents of the interview to establish that Millett and the girl had a consensual relationship, to garner sympathy for her client, to compare the relative maturity levels of Millett and the girl, and to impeach Detective Ludlow's credibility. But trial counsel's use of the evidence once the trial court had ruled that it would not be excluded appears to have been a reaction to the admission of Millett's interview, not a deliberate trial strategy that would have led to counsel's pretrial failure to suppress the evidence. And had the interview been suppressed, Detective Ludlow would have been prevented from testifying about Millett's admissions in the interview altogether, eliminating the need to impeach the detective. We therefore do not agree with the State that trial counsel's failure to file a motion to suppress based on the inadequate *Miranda* warnings was a strategic decision.

¶19 Trial counsel's failure to recognize the inadequate *Miranda* warnings and to file a motion to suppress was not a legitimate trial tactic and fell outside the wide range of professionally competent assistance. We therefore conclude that trial counsel's performance was deficient.

*Prejudice*

¶20 Millett argues that there is a reasonable likelihood that he would have obtained a more favorable outcome if the jury had not heard the statements he made during his police interview or Detective Ludlow's testimony about the interview. We agree.

¶21 "Under *Strickland*, even when counsel's performance is inadequate, a defendant who has been convicted of a crime is not entitled to a new trial unless the defendant establishes that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *State v. Hales*, 2007 UT 14, ¶ 86, 152 P.3d 321 (quoting *Strickland v. Washington*, 466 U.S. 668, 695 (1984)). "'A reasonable probability is a probability sufficient to undermine confidence in the [jury verdict].'" *Id.* (alteration in original) (quoting *Strickland*, 466 U.S. at 694). "Because '[s]ome errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated trivial effect,' in determining the effect of the error, we 'consider the totality of the evidence before the . . . jury.'" *Id.* (alteration and omission in original) (quoting *Strickland*, 466 U.S. at 695–96).

¶22 To convict Millett of attempted rape and forcible sodomy, the State needed to prove that the girl's participation in the sexual acts was nonconsensual, i.e., that her consent was enticed or coerced. *See* Utah Code Ann. § 76-5-406(11) (LexisNexis 2008). The State explains that at trial, its theory of lack of consent "was based mostly on coercion or enticement." In support of the charges, the State presented the girl's testimony, her police statement, Detective Ludlow's testimony, and the incriminating statements made by Millett during his police interview. On appeal, the State argues that Millett was not prejudiced by the

admission of his interview statements because both the girl's testimony and her statements to police supported its theory that Millett coerced or enticed the girl to engage in oral and vaginal sex.

¶23    At trial, the State called the girl as its first witness. During direct examination, the State asked the girl to testify about the night when Millett asked her to engage in oral sex:

> Q:    [D]id the defendant, Mr. Millett, have any conversation with you about the status of your relationship?
> A:    Not really. He said maybe in the future, you know, but it was never like for sure, like, we didn't know if we were going to be together or not.
> . . . .
> Q:    Okay. After . . . you talked about your relationship in his backyard, . . . what happened next?
> . . . .
> A:    Just what I said before. He wanted a blow job and I complied.
> . . . .
> Q:    You testified that on other occasions he had asked you for oral sex and you had said no and that was the end of it, right?
> A:    Yes.
> Q:    On this occasion he asked you for a blow job as you said, right?
> A:    Uh-huh.
> Q:    Okay. What happened right after he asked you. Did you immediately comply or not?
> A:    Not immediately, but I did.
> Q:    Can you describe the process of not immediately?
> A:    I just eventually said yes.
> . . . .

> Q: Okay. So after he asked you and you did not immediately say yes, what changed your mind or what occurred in those moments?
>
> A: I just changed my mind.
>
> Q: Was there any other conversation that led up to that?
>
> A: Not really.
>
> Q: Okay. Can you describe what you mean when you say not really?
>
> A: I don't know. We talked about our relationship and then I just said okay.
>
> Q: . . . [C]an you describe anything you remember about that conversation about your relationship?
>
> A: Oh, we just talked about whether we'd be boyfriend and girlfriend or not.
>
> Q: Okay. And after talking about that, what happened?
>
> A: I don't know. We said maybe in the future.
>
> Q: And then you complied?
>
> A: Yes.
>
> . . . .
>
> Q: Did you ever stop trying to give him oral sex in that incident?
>
> A: Yes, but then I just continued.
>
> . . . .
>
> Q: What made you continue?
>
> A: I just decided to.

¶24 The girl testified that it was her decision to change her mind and that "nobody makes [her] do what [she doesn't] want to do." When asked if Millett ever told her "if you don't have sex with me, we're breaking up," the girl responded that they were "never officially together" and that neither she nor Millett really understood "what [their] relationship status was."

¶25 On redirect examination, the State moved to admit the girl's initial statement made to police into evidence as a prior

inconsistent statement. The State called attention to the fact that the girl originally stated that Millett had told her "he didn't want to be together" after she said she did not want to engage in oral sex. When questioned about Millett's statement to her, the girl testified that it "annoyed" her and that it was part of the persuasion that caused her to reconsider her decision not to engage in the sexual activity.

¶26   During recross examination, Millett's counsel asked the girl if it made her "very sad" that Millett became angry when she decided that she did not want to engage in oral sex. The girl responded, "yes." She then testified that when Millett told her to leave, she told him "not until . . . [they] figure[d] this out" because she is "stubborn." She and Millett then engaged in oral sex. Millett's counsel asked the girl if she did not want to engage in oral sex from the beginning or just after a while. She testified that it was "kind of the whole time." After Millett and the girl attempted to have vaginal sex, she testified that she "asked [Millett] if [they] were . . . still on good terms" and that he said, "yes."

¶27   The girl's direct testimony, which was favorable to Millett, conflicted with her testimony on redirect examination and recross examination. Given the girl's varying testimony, the jury would have to choose which version of her testimony to believe. While it is true that the girl later testified that Millett was angry after she said "'no,'" that this "'annoyed'" her, that she did not want to give him oral sex but nevertheless complied, and that afterward she asked Millett if they were still on "'good terms,'" the girl never testified that Millett threatened to end their relationship if she did not perform oral sex on him.

¶28   In light of the equivocal state of the girl's testimony, the introduction of Millett's incriminating statements and Detective Ludlow's testimony about the interview "alter[ed] the entire evidentiary picture" before the jury. *State v. Hales*, 2007 UT 14, ¶ 86, 152 P.3d 321 (citation and internal quotation marks omitted). The only unequivocal evidence supporting the State's theory that Millett threatened to end his relationship with the

girl in order to entice or coerce her to engage in oral and vaginal sex came from Detective Ludlow's testimony. When asked what he had questioned Millett about during the interview, Detective Ludlow responded that he "asked [Millett] specifically about the conversation that he had with [the girl] regarding him telling her that if she didn't go along with his plans for these sex acts, that he was done with her." Detective Ludlow stated, "[Millett] denied it initially, but he did admit to it." Detective Ludlow also explicitly stated that during the interview, Millett had admitted to telling the girl "that they would be done if she did not give into his demands."

¶29   It was Detective Ludlow's testimony that formed the State's theory for the jury that Millett used his relationship with the girl to entice or coerce her into engaging in oral and vaginal sex. Because Millett's interview statements and Detective Ludlow's testimony "undoubtedly swayed the jury's perception of the defendant—and not for the better—it is difficult to imagine how counsel's failure to . . . file a motion to suppress did not substantially prejudice [Millett's] case." *See State v. Snyder*, 860 P.2d 351, 360 (Utah Ct. App. 1993). Thus, the evidence that should have been suppressed provided the crucial evidence to convict Millett and "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." *See State v. Ott*, 2010 UT 1, ¶ 40, 247 P.3d 344 (omission in original) (citation and internal quotation marks omitted). If the evidence had been properly excluded, Millett may well have received a more favorable result at trial. *See Strickland v. Washington*, 466 U.S. 668, 696 (1984); *State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769. We therefore conclude that Millett's trial counsel rendered constitutionally ineffective assistance and that Millett is entitled to a new trial.

CONCLUSION

¶30   We conclude that Millett was not provided adequate *Miranda* warnings before being interviewed by police. His trial counsel's failure to move to suppress the interview statements

on this ground constituted ineffective assistance of counsel. We therefore reverse Millett's convictions for forcible sodomy and attempted rape, and we remand for a new trial.

———————