Opinion
CHRISTIANSEN, Judge:
11 Defendant Anh Tuan Pham challenges his convictions, He argues that the admission of preliminary hearing testimony infringed upon his Confrontation Clause rights and that the State failed to produce sufficient evidence at trial to support one of the convie-tions. We affirm,
*736 BACKGROUND
{2 Defendant and his friend went to a convenience store to replenish their party supplies. The victim (Victim) and his girlfriend went to. the same convenience store to get water for their baby. After they arrived, they saw Defendant "picking on" or "bullying" two younger men outside the store. Victim approached, and the younger men asked Victim for a ride.. Defendant turned to Victim and asked him several times if he "wanted problems too." Victim responded each time that he did not. Nevertheless, the situation escalated. Defendant pulled out his gun and shot Victim; the bullet entered Vie-tim's lower abdomen and exited through his scrotum, before lodging permanently in Vie-tim's left leg.
T3 Two police officers were across the street from the convenience store and, upon hearing the gunshot, ran to the store, yelling "stop now" and "police." Defendant and his friend fled in a van, later ditching it and stealing an SUV whose owner had left it running. Defendant was apprehended later that night and was charged with discharge of a firearm causing serious bodily injury, receiving or transferring a stolen vehicle, obstructing justice, and failing to stop or respond to an officer's signal.
14 Victim was taken to a hospital, where he stayed for three days. For two weeks, he could not walk without pain, returned to the hospital for further treatment, believing that the bullet had hit a nerve and caused problems in his foot. Victim later
. T5 Victim testified at Defendant's preliminary hearing, and Defendant cross-examined Victim without any limitation by the trial court. However, Victim moved to Mexico before the trial in this matter, and neither the United States Marshals Service nor the Mex1can authorities were able to locate him. The State therefore filed a motion in limine seeking 'to admit Victim's prelunmary hearing testimony. The trial court granted that motion over Defendant's objection.
T6 At Defendant's jury trial, Victim's girlfriend, Defendant's friend, and the responding police officers testified for the State. Victim's preliminary hearing testimony was
also read to the jury, Defendant testified in his own defense. The jury found Defendant guilty of all four charges, and Defendant timely appealed.
ISSUES AND STANDARDS OF REVIEW
T7 Defendant contends that the trial court erred in allowing Victim's preliminary hearing testimony to be read at trial, because doing so violated his constitutional right to confrontation. We review a trial court's decision to admit testimony that may implicate the Confrontation Clause for correctness. State v. Poole, 2010 UT 25, ¶ 8, 282 P.3d 519.
18 Defendant also contends that the State did not produce sufficient evidence of Victim's injuries to support Defendant's conviction for discharge of a firearm causing serious bodﬂy injury. We will reverse a jury's guilty 'yerdict 'due to insufficiency of the evidence only when the evidence, viewed in the light most favorable to the verdict, is so inconclusive' or mherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crimes of which he or she was convicted. See State v. Kennedy, 2015 UT App 152, ¶ 19, 354 P.3d 775;, State v. Labrum, 2014 UT App 5, ¶ 17, 318 P.3d 1151.
'ANALYSIS
I. Confrontation Clause
T9 Defendant first contends that the admission of Victim's preliminary hearing testimony violated his Confrontation Clause rights. "The Sixth Amendment to the United States Constitution states in relevant part, In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses agamst him... .'" State v. Marks, 2011 UT App 262, ¶ 13 n. 6 262 P.3d 13 (ellipses in original) (quoting U.S. Const, amend. VI). "Where testimonial evidence is at issue ..... the Sixth Amendment demands what the common law required: unavailability [of the witness] and a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 154, 158 L.Ed.2d 177 (2004); see also State v. Garrido, 2013 UT App 245, ¶ 20, 314 P.3d 1014, Cf. State v. Brooks, 638 P.2d 537, 541 (Utah *737 1981) (noting, in a pre-Crawford case, that for purposes of a hearsay challenge, "cross-examination takes place at preliminary hearing and at trial under the same motive and interest" because defense counsel "acts in both situations in the interest of and motivated by establishing the innocence of [his or her] client"); but see infra 1 17 n. 8.
110 Defendant does not contest that he was given an opportunity to cross-examine Victim at the preliminary hearing, but rather that "cross examination at a preliminary hearing is lumted in seope and opportunity and therefore madequate " Furthermore, Defendant "admits that he was not expressly limited in his eross-examination, but rather the nature of the preliminary hearing necessarily constricts confrontation." The essence of Defendant's argument is that preliminary hearings, as they are conducted under Utah law, are limited so as to preclude defendants from fully exercising their opportunity for cross-examination as guaranteed by the Confrontation Clause.
{11 Though Defendant "requests that Utah reconsider its opinion" on this issue, he concedes that our appellate courts have determined that the opportunity to cross-examine a witness at a preliminary hearing can satisfy a defendant's right to confrontation at trial. Defendant cites to this court's opinion in State v. Garrido, 2013 UT App 245, 314 P.3d 1014, which addressed the use of a witness's preliminary hearing testimony when that witness was unavailable at trial. There, the defendant's trial counsel chose not to cross-examine a witness sat the preliminary hearing, likely' because her preliminary hearing testimony contradicted her earlier statements to police and thus was favorable to the defendant. Id. 15. When the witness largely failed to appear at trial,[2] her preliminary hearing testimony was read to the jury. Id. TI 6. On appeal, the defendant argued that the admission of the witness's preliminary hearing testimony violated his Sixth Amendment right to confrontation. Id. 19. This court, held that, under the facts of that case, "it was the opportunity to cross examine [the now-unsgvailable witness], not the actual undertaking of cross-examination, that satisfied the requirements of Crawford." Id. T 20.
112 We will overrule a decision previously made by this court only when we are "clearly convmced that the rule was ongmally erroneous or is no longer sound [due to] changing conditions and that more good than harm will come by departmg from precedent." State v. Tenorio, 2007 UT App 92, ¶ 9 156 P.3d 854 (citation and internal quotation marks omitted). Defendant does not explicitly indicate under which of these paths he seeks abrogation of Garrido. In any event, neither Garrido nor Crawford state a blanket rule that an opportunity to cross-examine a witness at a preliminary hearmg will always, as a matter of law, satisfy a defendant's right to confrontation. Rather, we understand those cases to set forth the general proposition that it is posszble for the cross-examination opportunity at a preliminary hearing to satisfy that right. It is in this light that we consider Defendant's claim that Utah preliminary hearings are structurally limited such that defendants are denied an opportunity to cross-examine witnesses in a manner that satisfies their Confrontation Clause rights.
¶18 Defendant states that "Confrontation requires an opportunity for full and unfettered cerogs-examination in order to discover and display credibility, consistency, and fact." He asserts that "Utah preliminary hearings provide an inadequate opportunity for Confrontation" because Utah's "preliminary hearings do not allow Judge's to make substantial credibility determinations, are heard in favor of the prosecution, whom do not have to eliminate alternative inferences, and do not allow a defendant to deeply explore. is: sues of credibility or fact.! Thus, according to Defendant, "testimony elicited during [Utah preliminary hearings] is not subject to adequate cross-examination."
T14 Defendant refers us to a Colorado case, People v. Fry, 92 P.3d 970 (Colo.2004), which was decided 'shortly after Crowford. The Colorado Supreme Court held that a defendant’s right to confrontatlon was Vlolat- *738 ed when the court admitted a deceased witness's preliminary hearing testimony at trial. Fry, 92 P.3d at 9783, 981. In doing so, the court expressed concern that, because credibility is not an issue at a preliminary hearing, a defendant's cross-examination might not explore a witness's credibility, Id. at 977-78, The court explained that "allow[ing] extensive cross-examination by defense counsel so as to prevent any Confrontation Clause violations at trial if a witness were to become unavailable ... would turn the preliminary hearing in every case into a much longer and more burdensome process for all parties involved." Id. at 978. The Colorado Supreme Court noted its belief that other states had elected to do exactly that and, consequently, had preliminary hearings that amounted to mini-trials in order to provide defendants a full eross-examination opportunity. Id. at 977. The court concluded that Colorado's "preliminary hearing [procedure] does not provide an adequate opportunity to cross-examine sufficient to satisfy the Confrontation Clause requirements," and it refused to "expand the scope of [Colorado] preliminary hearings in order to allow them to satisfy Confrontation Clause requirements." Id. at 978.
€ 15 Defendant "insists that Utah's preliminary hearing standards are essentially the same as Colorado" but provides no comparative analysis of Colorado and Utah standards., We are therefore unable to measure how closely Utah's preliminary hearing standards track those of Colorado.
T16 However, Defendant does describe some facets of Utah's preliminary hearing process. For example, he notes that " 'the bindover standard [of the preliminary hearing] is intended to leave the principal fact finding to the jury.'" (Alteration in original) (quoting State v. Virgin, 2006 UT 29, ¶ 21, 137 P.3d 787). Defendant also explains that the "'evidentiary threshold at [the preliminary hearing] is relatively low'" and "'a showing of "probable cause" entails only the presentation of "evidence sufficient to support a reasonable belief that the defendant committed the charged crime."'" (Alteration in original) (quoting State v, Ramirez, 2012 UT 59, 19, 289 P.3d 444). And Defendant reminds us that the magistrate's role in assessing credibility at a preliminary hearing is limited and that the magistrate is to take reasonable inferences in the prosecution's favor.
{17 These statements, while true, do not limit the ability of a defendant to conduct a full eross-examination at a preliminary hearing. Although "principal fact finding" and determinations of credibility are left until trial, such considerations impose no obvious structural limitation on the seope or depth of cross-examination a defendant may conduct at a preliminary hearing. We are therefore unable to conclude that eross-examinations conducted within Utah's preliminary hearing framework can never satisfy a defendant's Sixth Amendment right to confrontation. See, e.g., State v. Brooks, 638 P.2d 537, 541-42 (Utah 1981) (holding that the defendants' opportunities for eross-examination during a preliminary hearing were constitutionally adequate for Confrontation Clause purposes, despite defense counsel being unaware of the witnesses' prior statements to police and thus being unable to cross-examine the witnesses about those statements, because defense counsel "apparently advisedly and intentionally decided to refrain" from cross-examining the witnesses about the challenged topics).[3]
*739 1 18 We need not decide today whether the inverse is true. It is true that some courts have considered changes in a defendant's motive to cross-examine and court-imposed limitations on eross-examination as factors relevant to determining whether a defendant had a full opportunity to cross-examine a witness during a preliminary hearing, Seq, eg., Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1481, 89 L.Ed.2d 674 (1986) (holding that "[by] cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated [the defendant's] rights secured by the Confrontation Clause"); State v. Henderson, 2006-NMCA-059, 119, 189 N.M. 595, 186 P.3d 1005 (concluding that a defendant's right to confrontation was not violated where he had the same motive to cross-examine the witness at the preliminary hearing and enjoyed "an unrestricted right to cross-examine" the witness); State v. Stuart, 2005 WI 47, 38, 279 Wis.2d 659, 695 N.W.2d 259 (vacating a defendant's conviction where a court "did not allow [the defendant] to cross-examine [a witness] at the preliminary hearing about the effect the pending charges had on his decision to cooperate"). In the case before us, however, Defendant does not allege that his motivation to cross-examine Victim changed between the preliminary hearing and trial, Nor does he claim that the trial court limited his eross-examination in any way. Under the cireumstances of this case, we cannot conclude that Defendant was prevented from exercising his Confrontation
Clause right to, in Defendant's words, "unfettered cross-examination in order to discover and display credibility, consistency, and fact." [4] © -
T 19 Defendant has not demonstrated that Utah's preliminary hearing procedures limit cross-examination of a witness in such a way that a defendant's Confrontation Clause rights are necessarily violated if that witness's testimony is read at trial due to the witness's unavailability. Defendant does not claim that the' specific cireumstances of his preliminary hearing resulted in such a limitation. Consequently, we hold that the court did not err in allowing Victim's preliminary hearing testimony to be read to the jury at trial. > to
II. Serious Bodily Injﬁry
120 Defendant next contends that the State did not provide sufficient evidence for the jury to conclude that Victim suffered serious bodily injury. Specifically, he argues that there was no evidence that the gunshot created a substantial risk of death.
¶21 Defendant was convicted of the first degree felony of unlawful discharge of a firearm eausing serious bodily injury. See Utah Code Ann. §76-10-508.1 (LexisNexis 2012). The Utah Criminal Code defines serious bodily injury as "bodily injury that creates or causes serious permanent disfigurement, protracted logs or impairment of the function of any bodily member or organ, or creates a substantial risk of death." Id. § 76-1-601(11). We consider only the third eriteri-on-substantial risk of. death.[5]
*740 122 "(Il is within the province of the jury to consider the means «and manner by which the victim's injuries were inflicted along with the attendant cireumstances in determining whether a defendant caused serious bodily injury." State v. Bloomfield, 2003 UT App 3, ¶ 18, 63 P.3d 110 (citation and. internal quotation marks omitted). In addressing an insufficiency-of- the-evidence claim, we review the evidence and all reasonable mferences drawn therefrom in the light most favorable to the jury's verdict. State v. Kennedy, 2015 UT App 152, 139, 354 P.3d 775.
123, Defendant admits that Victim's preliminary hearing testimony described his being shot in the leg, bleeding, feeling dizzy, spending three days in a hospital, having trouble walking for about two weeks, and experiencing considerable pain dunng those two weeks. Defendant neglects to mention that Victim also testified that the bullet struck and lodged permanently 'in his leg only 'after first passing through Victim's abdomen and serotum, See State v. Mitchell, 2013 UT App 289, 181, 818 P.8d 288 (noting that marshaling the evidence is "prudent tactical advice" because, generally, "[aJn appellant cannot demonstrate that the evidence supporting a factual finding falls short without giving a candid account. of that evidence.").
4 24 Defendant does not refer us to any case in which an appellate court has determined that evidence of-a gunshot wound was insufficient to support- a jury's: finding. Rather, he cites a single case in which a defendant beat his victim into unconsciousness, stomped on the victim's head, and ripped out, the Vlctlms eyebrow ring. Bloomfield, 2008 UT:App 8, T8, 68 P.3d 110. There, this court held that the evidence presented to the jury was sufficient to support the. jury's finding that the defendant had caused serious bodily injury, Id. € 18.
"I 25 Defendant baldly asserts that his case "simply does not present facts" like those in Bloomfield and that the jury's finding of serious bodily injury here therefore must have been unreasonable. But he does not argue that Bloomfield marks the boundary between bodily injury and serious bodily injury, Thus, the fact that the evidence of a severe beating in that case was sufficient to sustain the jury's finding of serious bodily injury has no bearing on Defendant's claim that the evidence of a shooting in his case was not sufficient for the jury.to find that he caused serious bodily injury.
any event, Defendant fails to cite any authority' suggesting that gunshot wounds do not or cannot create a substantial 'risk of death. On the contrary, a cursory search reveals several cases in which gunshot wounds to the leg have been fatal. See, eg., Hawkins v. Lafler, No. 11-cv-11250, 2015 "WL 2185970, at *1 (E.D.Mich,. May 11, 2015) (after being shot in the leg, the victim ran away to take refuge in a house, where he died from blood loss); Ostling v. City of Bainbridge Island, 872 F.Supp.2d 1117, 1121 (W.D.Wash.2012) (a than was shot in the leg and then bled to death); People v. Payton, No. 257402, 2006 WL 548917, at *1-2 (Mich, Ct.App. Mar. 7, 2006) (per curiam) (noting that a defendant shot a victim in the leg, that "the natural tendency of such behavior is' to cause death 'or great bodily harm," and that the victim did in fact die). Even if the wound is not directly fatal, a gunshot to ary part of the body can cause infections that lead to death. See, eg., People v. Fedora, 393 III. 165, 65 N.E.2d 447, 455-56 (1946) (two doctors' opinions that a victim's death had been caused by peritonitis resulting from a gunshot wound were "sufficient evidence" to support a jury finding that the shooter was responsible for causing death); State v. Davis, 317 Mo. 272, 295 SW. 96, 97-98 (1927) (testimony from two doctors that a victim's death had been caused by peritonitis resulting from being shot in the abdomen by the defendant approximately two months before death was "amply sufficient to support the verdict" of manslaughter); see also, eg., State v. Hamilton, 16 N.C.App. 330, 192 S.E.2d 24, 25.(1972) (considering the admissibility of a doctor's opinion that a victim died from "pneumonia [that] was secondary to the peritonitis which was secondary to the gunshot wound."); State v. Nix, No, C-030696, 2004 WL 2315035, 'at paras. 3, 16 (Ohio Ct.
*741 App. Oct. 15, 2004) (victim died in hospital, after being shot in the abdomen, from "acute ischemic colitis with peritonitis" or "dying bowel due to inadequate vascular supply due to injur[ed] vessels due to gunshot wound" (internal quotation marks omitted)); Adams v. State, 150 Tex.Crim, 431, 202 SW.2d 933, 934 (1947) (noting that a decédent's death from peritonitis was traceable to a gunshot wound caused by the defendant, who was therefore guilty of capital murder). Because being shot can lead to death, it is not inherently unreasonable for a jury to find that a particular shooting resulted in serious bodily injury by creating a substantial risk of death.
127 We will vacate a defendant's conviction after a jury trial due to the insufficiency of the evidence ouly if we determine that the evidence is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt as to whether the defendant committed the crime of which he or she was convicted. State v. Kepnedy, 2015 UT App 152, ¶ 39, 354 P.3d 775, Defendant has not demonstrated that a reasonable jury, after hearing evidence that Defendant fired a bullet that penetrated Victim's abdomen, serotum, and leg, causing Victim to be hospitalized for three days, must have entertained a reasonable doubt as to whether Defendant created a substantial risk of death.
CONCLUSION.
T 28 The trial court did not err by admitting Victim's preliminary hearing testimony to be read to the jury after determining that Victim was unavailable, because Defendant had a full opportunity to cross-examine Vie-tim at the preliminary hearing. Defendant has failed to show that the evidence was insufficient to support a jury finding that Victim suffered serious bodily injury.
29 Affirmed.

. "(Just as her testlmony from the prehmmary - hearing was about to be read aloud [to the jury] by a stand-in, [the witness] appeared in the back of the courtroom, shouted that she refused to testify, and fled from the courtroom." State v. Garrido, 2013 UT. App 245, ¶ 6, 314 P.3d 1014.

. On the other hand, we are also not convinced that a preliminary hearing always provides the opportunity for cross-examination guaranteed by the Confrontation Clause. The State filed a letter of supplemental authority pursuant to rule of the Utah Rules of Appellate Procedure, citing State v. Brooks, 638 P.2d 537, 541 (Utah 1981), for the proposition that "cross-examination takes place at preliminary hearing and at trial under the same motive and interest." We note that counsel's possession of the same motive and interest in conducting cross-examination does not necessarily mean counsel had the same opportunity to cross-examine. See Garrido, 2013 UT App 245, 120, 314 P.3d 1014 ("We conclude that it was the opportunity to cross-examine ..., not the actual undertaking of cross-examination, that satisfied the requirements of Crawford."). Indeed, the Brooks court separately considered whether "certain omissions in cross-examination at preliminary hearing precluded [the defendants] from an adequate exercise of the right to confrontation." Brooks, 638 P.2d at 541.
Moreover, thirteen years after Brooks was issued, the nature of preliminary hearings in Utah was changed by the passage of the Utah Victims' Rights Amendment. As relevant here, the Utah *739 Constitution was amended to provide that "[wlhere the defendant is otherwise entitled to a preliminary examination, the function of that examination is limited to determining whether probable cause exists" and to provide that "reliable hearsay evidence" is admissible at a preliminary hearing, See Utah Const. art. I, § 12. In light of these changes, the Utah Supreme Court overruled State v. Anderson, 612 P.2d 778 (Utah 1980), upon which the relevant portion of Brooks had partially relied. See State v. Timmerman, 2009 UT 58, ¶¶ 14-16, 218 P.3d 590. It is therefore unclear whether Brooks's blanket statement that "cross-examination takes place at prélimi-nary hearing and at trial under the same motive and interest" is still true insofar as Confrontation Clause rights are concerned. See Brooks, 638 P.2d at 541.

. On appeal, Defendant does not identify any shortcomings in the éross-examination actually conducted at his preliminary hearing. Rather, Defendant simply urges us to hold, as a matter of law, that Utah preliminary hearings never provide defendants with sufficient opportunity to cross-examine witnesses so as to satisfy the Confrontation Clause. ' -

. The State argues that the jury could also have found that the evidence of Victim's injuries satisfied the "protracted loss or impairment of the function of any bodily member or organ" prong, on the ground that two weeks was a protracted length of time. See Utah Code Ann. § 76-1-601(11) (LexisNexis 2012), Because we conclude that the evidence was sufficient to support *740 a jury fidding of "substantial risk of death," we need not address that argument.