2017 UT App 62

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CARL MACK COURTNEY,
Appellant.

Opinion
No. 20141172-CA
Filed April 6, 2017

Second District Court, Ogden Department
The Honorable Michael D. DiReda
No. 121901670

Emily Adams, Attorney for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and KATE A. TOOMEY concurred.

CHRISTIANSEN, Judge:

¶1 Defendant Carl Mack Courtney appeals from his
conviction for distribution of or arranging to distribute a
controlled substance, a second degree felony. *See* Utah Code
Ann. § 58-37-8(1)(a)(ii) (LexisNexis 2012). Specifically, Defendant
argues that he received ineffective assistance of counsel when his
trial counsel failed to timely move for a mistrial after a potential
juror allegedly tainted the prospective juror pool. We reverse the
trial court's denial of the mistrial motion, vacate Defendant's
conviction, and remand the case for further proceedings.

¶2 Defendant was charged with a drug-related crime. During
jury selection, defense counsel asked the prospective jurors
whether any of them knew himself or Defendant. One

prospective juror (Juror Five) responded affirmatively and offered additional unsolicited information:

> [Defense counsel]: Does anybody know myself or Mr. Courtney?
>
> [Juror Five]: Due to my years in law enforcement, yes. I have had affiliations with him, especially during the time that I was serving as an agent for the Weber-Morgan Narcotics Strike Force.

¶3     The court's questioning of the venire continued without further attention being drawn to this exchange. A few minutes later, however, the court asked the jury, "Would any of you have difficulty in affording the defendant his guarantee of being considered innocent until proven guilty beyond a reasonable doubt or, stated differently, would any of you believe that because the defendant has been charged in this case by the State that there must be some basis for his guilt?" Juror Five raised her hand, but before she could speak, the court cut her off and asked both counsel to approach the bench for a discussion out of the potential jurors' hearing. At the bench discussion, the court and both counsel discussed Juror Five's first response:

> THE COURT: We dodged a bullet the first time.
>
> [Defense counsel]: No, we didn't. We—
>
> THE COURT: Well I mean I guess what I'm saying is we didn't dwell on it. We didn't linger on it. I recognize what you're saying, but the problem is there's no way to anticipate that she would say what she said. . . .
>
> . . . .
>
> THE COURT: Well I don't think there's any question that she is gone. I guess the bigger issue

though is I don't want her tainting the [juror] pool and if we have an issue now where you already feel that she has done that, then we need to make a record on it because I don't want to plow through, pick a jury of eight and then have this become an issue. I mean I guess I don't know how we're going to determine whether she has tainted the pool or not.

¶4    The court and both counsel eventually agreed to excuse Juror Five immediately and to highlight another reason for doing so, in hopes of minimizing the taint. In front of the entire prospective juror pool, and before Juror Five could explain why she had raised her hand, the court excused her on the basis of a potential conflict:

> THE COURT: The discussion that we had at the bench was based on the fact that your husband comes to my court every Thursday as a probation officer[.] I think it would be better to just excuse you at this time. . . . So rather than have you stay here only to excuse you at the end, I think what we'll do is just let you get on your way now[.]

¶5    After Juror Five was excused, a jury of eight jurors was selected from the remaining prospective juror pool and sworn in. Immediately afterward, and outside the presence of the jury, the court and both counsel again discussed Juror Five's statements. Defense counsel noted Juror Five had "set up controlled buys when she was a Weber-Morgan Strike Force Agent" and that her "comments to that end here today" included a reference to "knowing my client in that capacity in front of all the jurors." Defense counsel also stated that he had been looking at "other jurors' faces as she was making [her] comments and there were a couple of jurors that kind of you know [perked] up when they were listening to what she was saying." Defense counsel described the effect as "possible jury tainting." And defense

counsel further noted that, "when the Court asked can anybody here not afford [Defendant] the right of innocence until proven guilty," Juror Five had "popped back up" and was "the only person that raised her hand to that question." Defense counsel agreed that "the Court did the best the Court could to quash the issue when it arose, but I mean up to that point there's possible bias already and maybe tainting of the jury pool at that time."

¶6     The court asked why an objection or motion for mistrial "was never brought or even alluded to" at the bench discussion. Defense counsel replied that "there was never a break again," that "the jury was in the room the whole time," and that he had not "had a chance to talk to my client about his concerns about it." Defense counsel admitted that he had not made a motion for mistrial and that he had "missed the Court swearing the jury" because he "was re-organizing and shifting sides and wasn't paying attention." The court expressed frustration with counsel's failure to move for a mistrial, noting that "[t]he minute the response was made we could have excused the panel and [trial counsel] could have made that motion right at that moment." The court then asked defense counsel whether he was moving for a mistrial but defense counsel declined to answer immediately because he wanted to consult with Defendant. The court granted a recess for defense counsel to do so.

¶7     After the recess, and still outside the presence of the jury, the discussion continued. The court noted, "Here we have what I perceive as a pretty significant situation," and stated, "I don't know how to cure it at this point and maybe we can't[.]" The court was also worried about an appeal should Defendant be convicted: "I just don't want to try this again in a year or two years because [the appellate courts] send it back on an ineffective assistance [of counsel claim.]" Nevertheless, the court indicated that if defense counsel moved for a mistrial, "the likelihood that I'm going to grant it is very slim mostly because of untimeliness."

¶8      Both the court and the prosecutor expressed concern that, because the jury had been sworn, jeopardy had attached. Consequently, they speculated as to whether Defendant could "waive double jeopardy."[1] The court then asked whether defense counsel wanted to move for a mistrial, defense counsel made the motion, and the trial court denied it as untimely. The jury was then called into the courtroom, and the trial proceeded, ultimately resulting in Defendant's conviction. Defendant timely appealed.

¶9      On appeal, and represented by new counsel, Defendant contends that he received constitutionally ineffective assistance from his defense counsel when counsel failed to make a timely motion for mistrial.[2] When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review; consequently, we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law. *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587. "To succeed on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the defendant was prejudiced thereby." *State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). *But see infra* ¶ 15 note 5.

---

1. Granting a defendant's unforced motion for mistrial does not implicate double jeopardy. *See, e.g.*, *United States v. Scott*, 437 U.S. 82, 93 (1978) ("Where . . . a *defendant* successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution." (Emphasis in original)).

2. Defendant does not argue that the trial court's determination that the mistrial motion was untimely amounted to an abuse of discretion. Under these circumstances, such an argument might be well taken.

¶10    Defendant argues that his counsel's performance was deficient due to the failure to guarantee the empanelment of an impartial jury by appropriately and timely objecting to a tainted jury. "Among the most essential responsibilities of defense counsel is to protect [his or her] client's constitutional right to a fair and impartial jury by using voir dire to identify and ferret out jurors who are biased against the defense." *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001). Defendant asserts that, to fulfill this responsibility, counsel should have moved for a mistrial before the jury was sworn.

¶11    Generally, if counsel knows or believes that a juror or jury should be disqualified due to bias or prejudice, the correct time to raise an objection is before the jury is sworn. *Burton v. Zions Cooperative Mercantile Inst.*, 249 P.2d 514, 516 (Utah 1952). This is because the range of remedies short of a mistrial may be reduced after the jury has been sworn and jeopardy attaches. *See State v. Johnson*, 2013 UT App 276, ¶ 8, 316 P.3d 994 (holding untimely a challenge based on counsel's failure to object to the continuance of trial, because the timeliness requirement "prevents defendants from sandbagging the prosecution by waiting until the only available remedy for the alleged error is outright dismissal or a new trial" (citation and internal quotation marks omitted)). Defendant notes that defense counsel had "multiple opportunities to move for a mistrial before the jury was sworn but failed to do so."

¶12    The State responds that "counsel properly chose to postpone his mistrial motion." Citing rule 18 of the Utah Rules of Criminal Procedure, the State argues that "[c]hallenges to juror bias must be against an individual juror" and not against an entire prospective juror pool. According to the State, if defense counsel had raised a challenge before the jury was selected, he would have had to question each member of the venire individually as to whether they heard and were affected by Juror Five's comments. As a result, the State insists that it was objectively reasonable for defense counsel to avoid drawing attention to those comments by postponing the challenge.

¶13    "The interpretation of a rule of procedure is a question of law that we review for correctness." *State v. Rodrigues*, 2009 UT 62, ¶ 11, 218 P.3d 610 (brackets, citation, and internal quotation marks omitted)). We do not agree that, before the swearing of the jury, defense counsel was limited only to challenging prospective jurors individually. Rather, defense counsel could have properly moved for a mistrial during jury selection. Such a motion would have been equivalent to a motion for new trial under rule 24 of the Utah Rules of Criminal Procedure. *See, e.g., State v. Duran*, 2011 UT App 254, ¶¶ 12, 19, 262 P.3d 468 (using the terms interchangeably). Rule 24 provides that "[t]he court may, upon motion of a party or upon its own initiative, grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." Utah R. Crim. P. 24(a). Unlike a challenge to an individual juror made pursuant to rule 18 of the Utah Rules of Criminal Procedure, a motion for new trial pursuant to rule 24 may be made at any point during the trial process; the only timing restriction is that such a motion "shall be made not later than 14 days after entry of the sentence, or within such further time as the court may fix[.]" *Id.* R. 24(c); *see also State v. Harrison*, 2001 UT 33, ¶ 6, 24 P.3d 936 (noting that Utah courts enjoy "broad latitude to control and manage the proceedings and preserve the integrity of the trial process"). We therefore conclude that, before the selection and swearing of the jury, defense counsel could have properly objected to the entire pool of prospective jurors present when Juror Five made her improper comments.

¶14    We also determine that, under these circumstances, defense counsel's performance was deficient due to his failure to object to the seating of the jury once he became aware of the potential taint. While it is true that a motion for new trial is timely at any point during the trial process, it is also incumbent upon the parties to make such motions at the earliest possible opportunity to avoid wasting time and resources. As the State points out, defense counsel had several opportunities after the problematic comments were made and before the jury was

sworn to move for a mistrial outside the jury's hearing.[3] Likewise, at any of those times, defense counsel could have asked the court for time to speak with Defendant privately. We can see no valid tactical reason for ignoring the unsubtle hints given by the trial court and delaying such motion until after the jury was sworn.[4] *See State v. Millett*, 2015 UT App 187, ¶ 13, 356 P.3d 700 ("[W]here a defendant can show that there was no conceivable legitimate tactical basis for counsel's deficient actions, the first prong of *Strickland* is satisfied." (Citation and internal quotation marks omitted)).

¶15    We next consider whether defense counsel's deficient performance prejudiced Defendant.[5] Defense counsel's failure to

_____

3. Of course, any attempt to question each prospective juror to ferret out whether Juror Five's comment actually tainted his or her impartiality toward Defendant would have inevitably set the stain deeper by drawing the jurors' attention to its meaning, if they had missed it the first time.

4. It is puzzling that the trial court, despite its immediate recognition of and verbal handwringing about the possibility of a tainted prospective juror pool, did not on its own initiative dismiss that pool and restart voir dire with a fresh pool. When it is obvious to a trial court that there is a high probability of a tainted jury pool, the court should at least consider exercising its inherent power to declare a mistrial sua sponte and grant a new trial. *See* Utah R. Crim. P. 24(a).

5. It is not entirely clear whether demonstrable prejudice is a requisite element in an unpreserved challenge, raised under the rubric of ineffective assistance of counsel, to the empanelling of a jury drawn from a tainted jury pool. A structural error is an error "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). A tainted or biased jury is one type of structural error. *See, e.g.*, *Mach v. Stewart*, 137 F.3d

(continued…)

move for a mistrial or a new trial before the jury was sworn resulted in the trial court's decision to deny the motion. We must determine whether there is a reasonable likelihood of a result more favorable to the defendant. *See Strickland v. Washington*, 466 U.S. 668, 685, 687, 695 (1984). *But see Mach v. Stewart*, 137 F.3d 630, 633 (9th Cir. 1997) (suggesting that, in cases of structural error, no prejudice need be shown).

¶16   Defendant was charged with a drug offense. When trial counsel asked if any of the prospective jurors knew trial counsel or Defendant, Juror Five responded that she had "had affiliations with him" during her service with law enforcement, "especially during the time that [she] was serving as an agent for the Weber-Morgan Narcotics Strike Force." Defendant asserts

---

(…continued)

630, 633 (9th Cir. 1997) (holding that structural error occurred when a jury was exposed "during voir dire to an intrinsically prejudicial statement [which] resulted in the swearing in of a tainted jury"). However, it is not settled whether the prejudice requirement of an ineffective assistance of counsel claim applies when the deficient performance complained of is counsel's failure to preserve a structural error claim. *See State v. Cruz*, 2005 UT 45, ¶ 18, 122 P.3d 543 (noting, in a jury-instruction-error case, a split amongst jurisdictions as to whether a defendant must establish prejudice when alleging the existence of unpreserved structural errors); *see also State v. Maestas*, 2012 UT 46, ¶ 57, 299 P.3d 892 ("The denial of counsel is a structural error that does not require a showing of harm 'where assistance of counsel has been denied entirely or during a critical stage of the proceeding.'" (Emphases and citation omitted)); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (when counsel's performance is deficient, "counsel [is] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," which amounts to the denial of the right to counsel). We assume, without deciding, that prejudice is a requisite element of a successful appeal here.

that this statement strongly suggested to the jury that Defendant had previously had drug-related run-ins with law enforcement, and thereby prejudiced him. *Cf. State v. Lafferty*, 749 P.2d 1239, 1263 (Utah 1988) (Stewart, J., concurring in the result and dissenting as to the penalty) (noting that, with reference to specific other crimes, "the evidence of other crimes is itself highly prejudicial and will undoubtedly taint a jury's deliberations with respect to the appropriate penalty"), *abrogated on other grounds by Met v. State*, 2016 UT 51; *State v. High*, 2012 UT App 180, ¶ 26, 282 P.3d 1046 (discussing the risk of unfair prejudice arising when a jury is tainted by references to gang membership).

¶17 The State first responds that "[t]he other prospective jurors could have understood that when [Juror Five] stated that she had 'affiliations' through the strike force with 'him,' she was referring to [trial counsel], not Defendant." (Emphasis omitted.) The State asserts, "Because they knew [Juror Five] worked in law enforcement, they may well have concluded that her 'affiliations' were with the criminal defense attorney representing Defendant." However, it is unlikely that prospective jurors would have reached this understanding; when responding to a question, people rarely refer to the questioner in the third person rather than the second person. It would not be logical for a prospective juror to believe that Juror Five would reply to trial counsel's question by stating that she had "had affiliations with him" when she meant she had "had affiliations with you."

¶18 The State also responds that the prospective jurors might have understood that the "affiliation" was "as a witness, a victim, or a confidential informant." But these categories still bear a reasonable inference that Defendant had previously engaged in drug-related activities of the sort for which he was on trial, especially when Juror Five's comment referred to her multiple interactions "with him." Indeed, many confidential informants in drug cases agree to become informants in order to "work-off" their own drug-related charges.

¶19 In any event, the issue is not whether the prospective jurors *could have* arrived at an innocent understanding of Juror Five's comment but rather whether it is reasonable to presume they all did. This is because a defendant's right to a trial by a fair and impartial jury is of a constitutional caliber. U.S. Const. amend. VI; Utah Const. art. I, §§ 10, 12; *State v. Bishop*, 753 P.2d 439, 448 (Utah 1988) ("An accused has a right to a fair trial by an impartial jury."), *overruled on other grounds by State v. Menzies*, 889 P.2d 393 (Utah 1994)). Moreover, the trial court, who was better situated to evaluate the effect on the prospective jurors than an appellate court, expressed the opinion that the comment created a "pretty significant situation" and even opined, "I've got to do something."

¶20 The State argues that "the comment could not have prejudiced Defendant," because "[t]he jury heard testimony that members of the strike force were familiar with Defendant anyway." The State asserts that "the unchallenged and admissible evidence established the very thing Defendant says [Juror Five's] comment may have implied—he was involved in selling drugs." We note that this testimony was limited to a single reference by a detective that unnamed other agents "were familiar with [Defendant]." The fact that this trial testimony was made after the jury had heard Juror Five's comment may have informed trial counsel's decision not to challenge it as inadmissible hearsay. But, more importantly, Juror Five was not a witness and her comment was not made under oath. The comment added corroborating weight to the evidence adduced at trial but was not subject to cross-examination by Defendant. *See, e.g.*, *State v. Pham*, 2016 UT App 105, ¶ 9, 372 P.3d 734 ("The Sixth Amendment to the United States Constitution states in relevant part, 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .'" (ellipses in original) (citation and additional quotation marks omitted)), *cert. granted*, 384 P.3d 567 (Utah 2016). Thus, even if the jury heard testimony of similar import to Juror Five's comment, her inadmissible comment impermissibly added credibility to that testimony.

¶21    At oral argument before this court, the State also asserted that any possibility that the prospective jurors were tainted by Juror Five's comment was eliminated by the trial court's further questioning of the prospective jurors. After dismissing Juror Five, the court asked the remaining prospective jurors about the presumption of innocence:

> Would any of you have difficulty in affording the defendant his guarantee of being considered innocent until proven guilty beyond a reasonable doubt or stated another way would any of you believe that because the defendant has been charged in this case by the State, that there must be some basis for his guilt? All right. I don't see any hands raised.

The State argues that the lack of response to this question indicated that the prospective jurors did not consider Defendant more likely to be guilty of the charged crime as a result of Juror Five's comment made during voir dire.

¶22    We do not agree that this question was a panacea for Juror Five's comment. The question asked by the court was focused on ferreting out possible bias arising from the fact that Defendant had been charged by the State. It was not aimed at establishing whether the prospective jurors believed it was more likely that Defendant was guilty of the charged drug crime due to his previous "affiliations" with the Weber-Morgan Narcotics Strike Force. Consequently, the trial court's question did not shed much light on the potential taint caused by Juror Five's improper comment. Furthermore, "[r]uling that a prospective juror is qualified to sit simply because he says he will be fair ignores the common-sense psychological and legal reality of the situation." *State v. Saunders*, 1999 UT 59, ¶ 35, 992 P.2d 951. "[B]ecause a prospective juror cannot know much about the case at the time of voir dire, a juror cannot anticipate how he will react when asked to decide a case once all the facts are known." *Id.*; *cf. id.* ¶ 36 (holding that, where a trial court refused to allow

further questioning of a prospective juror after one of her answers suggested the possibility of bias but she further stated that she believed the defendant to be innocent until proven guilty, "We now make emphatically clear that a juror's statement alone that he or she can decide a case fairly pursuant to the law given by the trial court is not a sufficient basis for qualifying a juror to sit . . . . [C]oncluding the issue by taking a juror's conclusory statement that he or she will . . . decide the case fairly is not sufficient"). The trial court's question about the presumption of innocence therefore was not sufficient by itself to eliminate the possibility that Juror Five's comment tainted the other prospective jurors.

¶23   Juror Five's comment suggested that Defendant had repeatedly had some involvement in the type of crimes he was on trial for, and the comment improperly corroborated a witness's testimony. Absent Juror Five's comment, there is a reasonable likelihood that the result of Defendant's trial would have been different. *See supra* ¶ 15 note 5.

¶24   We conclude that trial counsel's performance was deficient and that the deficient performance prejudiced Defendant. Defendant was therefore denied his right to the effective assistance of counsel at his trial. Accordingly, we vacate Defendant's conviction and remand the case for a new trial.

———————